COMMONWEALTH of Pennsylvania, Appellee

v.

**Rigoberto RAMOS, Appellant.**

Superior Court of Pennsylvania.

Argued May 8, 2007.
Filed Nov. 15, 2007.

---

**2.** While the right to counsel may be waived, 42 Pa.C.S.A. § 6337, there is absolutely no evidence of such a waiver here.

Shonda Williams, Philadelphia, for appellant.

Jonathan M. Levy, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOYCE *, STEVENS, LALLY–GREEN, TODD, KLEIN, BENDER, GANTMAN, McCAFFERY, and PANELLA, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Rigoberto Ramos, appeals from the trial court's July 7, 2004 judgment of sentence. We affirm.

¶ 2 The trial court found the following facts:

The relevant facts adduced at trial are as follows: at approximately 7:40 p.m. on the evening of April 29, 2003, Officer Victor Roldan and Officer Brian Dillard were on uniformed bicycle patrol in the area of the 100 block of West Tioga Street in Philadelphia when they were flagged down by a woman. The officers listened to the woman complain about the actions of a nearby man. As the woman told her story to the officers, an automobile drove by. The woman cried out, "There he goes!" and pointed at the driver of the car, later identified as the defendant, Rigoberto Ramos.

Officer Dillard ordered the defendant to stop, and the defendant stopped the car on the 100 block of West Tioga Street. Officer Dillard then approached the vehicle to speak with the driver, but when the officer began to dismount his bicycle, the defendant slammed on the gas and drove away. As the defendant was speeding away, he struck Officer Dillard's bike as he was dismounting it. Luckily, Officer Dillard was able to jump clear of the collision and did not suffer any injuries. His bike was damaged in the collision.

About two or three car lengths further down the street, Officer Roldan watched this scene unfold and began to back-pedal to get out of the defendant's

* Judge Joyce did not participate in the consideration or decision of this case.

path as he sped down the street. He wasn't fast enough, however, and the defendant's vehicle struck the front tire of his bicycle. Officer Roldan and his bicycle were thrown to the ground, and the defendant then drove the Nissan over the bicycle, missing Officer Roldan's body by only a foot. Officer Roldan suffered a large scrape from his elbow to his wrist, bruising around his ribs, and missed a week's work while recuperating. The defendant then crashed into another car that was double-parked, and was arrested.

The defendant was arraigned on April 30, 2003. On May 22, 2003 the defendant's case became listed as a "protracted matter" and was scheduled to be heard on August 12, 2003. The Quarter Sessions file shows that the Commonwealth was prepared to proceed on August 12, but the Court could not provide a necessary interpreter, and the matter was therefore continued to the next available "protracted matter" date—November 18, 2003. On November 18, the Commonwealth required a continuance because one of the above-listed officers was in training. At the next hearing date—March 24, 2004—the "protracted matter" was finally resolved and the defendant was held for trial. On April 14, 2004 the defendant was arraigned, and the matter was scheduled for trial before this Court on July 2, 2004. On July 7, 2004, this Court heard the defendant's Rule 600 motion and denied it, finding in its discretion that the delay in bringing the defendant to trial was due to judicial delay and that the Commonwealth had exercised due diligence in bringing the matter to trial. A waiver trial ensued, at which time this Court adjudged the defendant guilty of Aggravated Assault, among other offenses.[1]

. . .

The Quarter Sessions file reveals that this case suffered extensive delays due to the congestion of the court system. Specifically, a gap of 82 days existed between the May 22, 2003 preliminary hearing date and the August 12, 2003 "protracted matter" hearing date. Though the Quarter Sessions file is silent as to whether August 12 was the earliest possible date for the "protracted matter" hearing to be heard, this Court is aware that three month lead times are typically necessary to schedule "protracted matter" hearings because they require a greater amount of the Court's already meager resources and overburdened docket. Armed with this knowledge, this Court concluded that August 12 was likely the earliest date that the "protracted matter" hearing could be held. These facts led this Court to find that the gap between the May 22, 2003 preliminary hearing date and the August 12, 2003 "protracted matter" hearing date was due to judicial delay—attributable neither to the Commonwealth nor to the defendant—and that an extension of the Rule 600 run date was warranted.

Additionally, this Court found that the Commonwealth exercised due diligence in bringing this matter to trial. Prior to the date when the defendant's [Rule] 600 motion was initially heard, the Commonwealth had requested a continuance on only two occasions. The Quarter Sessions file shows that the Commonwealth first required a continuance on August 12 because a Spanish interpreter was needed for one of their witnesses, but the Court could not supply one. The next "protracted matter" listing in courtroom 1003 was scheduled 98 days

1. The Rule 600 hearing, the trial, and the sentencing took place on the same day.

later, on November 18, 2003. On that date the Commonwealth needed a second continuance because a necessary police officer was in training. The next available date in Room 1003 was on March 24, 2004—over 120 days later. Given that the Commonwealth was otherwise prepared on August 12, 2003, this Court concluded that the Commonwealth would most likely have been prepared to go to trial well in advance of the Rule 600 run date had it not been for the excessive 224–day delay caused in large part by the difficulty in scheduling "protracted matter" hearings.

Trial Court Opinion, 9/1/05, at 1–2, 5.

¶ 3 Appellant raises a single issue for our review:

Did not the trial court err by failing to grant Appellant's Motion to Dismiss pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure, where the Commonwealth failed to exercise due diligence in bringing Appellant to trial within 365 days?

Appellant's Brief at 3.[2]

 ¶ 4 We review Appellant's Rule 600 argument according to the following principles:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill

will, as shown by the evidence or the record, discretion is abused.

The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Hunt,* 858 A.2d 1234, 1238–1239 (Pa.Super.2004) (*en banc*) (internal citations and quotation marks omit-

---

**2.** Appellant included this issue in a timely concise statement of matters complained of

on appeal. Pa.R.A.P. 1925(b).

ted), *appeal denied,* 583 Pa. 659, 875 A.2d 1073 (Pa.2005).

¶ 5 Rule 600 of the Pennsylvania Rules of Criminal Procedure provides, in relevant part, as follows:

**Rule 600. Prompt Trial**

. . .

[ (A) ](3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

. . .

(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

. . .

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600.[3]

¶ 6 As the text of Rule 600(A) makes clear, the mechanical run date comes 365 days after the date the complaint is filed. We then calculate an adjusted run date pursuant to Rule 600(C). Rule 600(C) expressly provides that certain time periods are to be excluded from the calculation of the Rule 600 run date. Our Courts have referred to the time periods specified in Rule 600(C) as "excludable time." *Hunt,* 858 A.2d at 1241; *see also Commonwealth v. Hill,* 558 Pa. 238, 736 A.2d 578 (1999).

---

**3.** This Court is aware that a substantial revision of Rule 600 has been proposed to the Pennsylvania Supreme Court. We believe our analysis is consistent with existing precedent and with the tenor of the proposed revision.

¶ 7 Pursuant to Rule 600(A) and (C), we calculate the mechanical and adjusted run dates as follows:

> The mechanical run date is the date by which the trial must commence under [Rule 600]. It is calculated by adding 365 days (the time for commencing trial under [Rule 600]) to the date on which the criminal complaint is filed. As discussed herein, the mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Commonwealth v. Cook,* 544 Pa. 361, 676 A.2d 639, 646 n. 12 (1996) *cert. denied,* 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997).[4] If the defendant's trial commences prior to the adjusted run date, we need go no further.

¶ 8 If, however, the defendant's trial takes place outside of the adjusted run date, we must determine, pursuant to Rule 600(G), whether the delay occurred despite the Commonwealth's due diligence. To this end, we have fashioned the "excusable delay" doctrine.[5] "Excusable delay" is a "legal construct" that "takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Hunt,* 858 A.2d at 1241. *See also Commonwealth v. Preston,* 904 A.2d 1, 11–12 (Pa.Super.2006) (*en banc*); *Commonwealth v. Jones,* 886 A.2d 689 (Pa.Super.2005), *appeal denied,* 587 Pa. 686, 897 A.2d 452 (Pa.2006); *Commonwealth v. Jackson,* 765 A.2d 389 (Pa.Super.2000), *appeal denied,* 568 Pa. 628, 793 A.2d 905 (Pa.2002). Our Supreme Court has made clear that "the Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time." *Commonwealth v. Matis,* 551 Pa. 220, 710 A.2d 12, 16 (1998). Moreover, the Commonwealth bears the burden of proving that its efforts were reasonable and diligent. *Id.*

¶ 9 "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth." *Hunt,* 858 A.2d at 1241–1242 (emphasis in original). Due diligence includes, among other things, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. *See id.* at 1242 (collecting cases); *see also Hill,* 736 A.2d at 592 (delay was beyond the Commonwealth's control where a co-defendant filed numerous pre-trial motions); *Jones,* 886 A.2d at 701–702 (80–day period between the defendant's arraignment and scheduled trial was excusable because the trial court determined the date assigned for trial was the earliest possible trial date); *Commonwealth v. Malgieri,* 889 A.2d 604, 607–608 (Pa.Super.2005) (unavailability of jurors due to an administrative decision of the local bench was a circumstance beyond the

---

**4.** *Cook* was decided under Pa.R.Crim.P. 1100, which was renumbered Rule 600 effective April 1, 2001. The rationale of *Cook* and of other Rule 1100 cases we rely upon here applies with equal force to the current version of the rule.

**5.** Excusable delay analysis is derived from the language of Rule 600(G). *Hunt,* 858 A.2d at 1241; *Jackson,* 765 A.2d at 393–395. We recognize that several panels of this Court have written that "excusable delay" is not expressly defined in the text of Rule 600. *See, e.g., Preston,* 904 A.2d at 11; *Hunt,* 858 A.2d at 1241. This statement is accurate insofar as the text of the rule does not delineate the many circumstances that might result in excusable delay.

control of the Commonwealth); *Commonwealth v. Aaron*, 804 A.2d 39, 43–44 (Pa.Super.2002) (*en banc*) (no due diligence where the Commonwealth made no request to schedule the defendant's trial prior to the Rule 1100 run date); *Jackson*, 765 A.2d at 395 (95–day period was excusable because a co-defendant's request for new counsel was beyond the control of the Commonwealth).

¶ 10 A period of delay that is excusable pursuant to Rule 600(G) results in an extension to the adjusted run date. *See Matis*, 710 A.2d at 16–17 ("delays attributable to the Commonwealth can be a valid basis to extend the period for commencement of trial if the Commonwealth is duly diligent.").

¶ 11 Our Supreme Court recently explained *Matis* as follows:

> We focused our analysis on the language of Rules 600(C) and 600(G). We noted that Rule 600(C) established criteria for when time could be "excluded" from the ... Rule 600(G) 365–day time period.... We then considered the second paragraph of Rule 600(G), which provides that a defendant's motion to dismiss with prejudice shall be denied and a case shall be tried despite defendant having been on bail without trial commencing for in excess of 365 days, so long as the Commonwealth exercised due diligence and the circumstances requiring the postponement(s) were beyond the Commonwealth's control. We held that delays meeting the second paragraph of Rule 600(G)'s criteria

would form the basis for an "extension" of time for the commencement of trial. *Commonwealth v. Dixon*, 589 Pa. 28, 907 A.2d 468, 475 (2006) [6]; *see also Jones*, 886 A.2d at 702–703 (charting the Court's calculation of excludable time and excusable delay).

¶ 12 To summarize, the courts of this Commonwealth employ three steps—corresponding to Rules 600(A), (C), and (G)—in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. *Cook.* Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date. *Cook.*

¶ 13 If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(G). As we have explained, Rule 600(G) encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. *Matis; Dixon; Jones*; Jackson.[7] Addition of any Rule 600(G) extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

 ¶ 14 Application of our Rule 600 analysis to the instant matter is straight-

---

6. *Dixon* addressed Rule 600(E), regarding an incarcerated defendant's entitlement to release on nominal bail after 180 days. The Supreme Court ultimately concluded that *Matis* and Rule 600(G) were inapposite to that issue. The Supreme Court's discussion of *Matis* and Rule 600(G) are, nonetheless, highly instructive in the instant matter.

7. Our decisions in *Preston, Malgieri*, and *Commonwealth v. Kearse*, 890 A.2d 388 (Pa.Super.2005), *appeal denied*, 588 Pa. 788, 906 A.2d 1196 (Pa.2006), make clear that we are to analyze the entire procedural history—from the date of the complaint to the date of trial—to ascertain the existence of any period(s) of Rule 600(G) excusable delay.

forward. The record reflects that the Commonwealth filed its complaint against Appellant on April 29, 2003. The mechanical run date, per Rule 600(A)(3), was April 30, 2004.[8] Appellant requested one continuance, and he concedes that the 16–day period between May 6, 2003 and May 22, 2003 attributable to the continuance is excludable pursuant to Rule 600(C). Addition of 16 days of excludable time results in an adjusted run date of May 14, 2004.

¶ 15 We next consider the 82–day period between May 22, 2003 and August 12, 2003. On May 22, the trial court decided to list this case as a protracted matter.[9] The trial court was unable to schedule a protracted matter hearing any earlier than August 12, 2003. The Commonwealth argues, and the trial court found, that this period is attributable to the trial court's full calendar and not to the Commonwealth's lack of diligence.[10] Since the complexity of this case and the clogged trial court docket are circumstances beyond the control of the Commonwealth, the trial court did not abuse its discretion in finding that the 82–day period between May 22 and August 12, 2003 is excusable pursuant to Rule 600(G). *Hunt; Jones.* Addition

of this 82–day period to the adjusted run date dictates that the final run date in this matter could not have come earlier than August 4, 2004. Since Appellant's trial took place in July of 2004, the trial court properly denied Appellant's Rule 600 motion.[11]

¶ 16 Appellant's sole argument does not warrant relief.[12] We therefore affirm the judgment of sentence.

¶ 17 Judgment of sentence affirmed.

¶ 18 Judge KLEIN files a Dissenting Opinion.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 I respectfully dissent. A preliminary hearing should be held within ten days of the arraignment under Pa. R.Crim.P. 540(F)(1). After the first listing on May 22, 2003, the preliminary hearing in this case was repeatedly continued until March 24, 2004, a period not of ten days, but of 329 days. The Commonwealth claims there was nothing it could do about this, blaming the delay on the trial court calendar. Yet, this scheduling problem would not have exceeded the run date had

---

**8.** Since 2004 was a leap year, the 365th day fell on April 28th rather than the 29th.

**9.** Philadelphia County courts list a case as a protracted matter if, due to the complexity of the case, the preliminary hearing is expected to take longer than usual.

**10.** Appellant argues that the delay from May 22 to August 12 was the result of the Commonwealth's failure to procure a necessary witness for the May 22 proceeding. This argument conflicts with defense counsel's assertions at the Rule 600 hearing pertaining to that period:

> That's fine. I'm not saying it's the Commonwealth's fault, but it's not our fault. So **I'm not saying that the Commonwealth isn't diligent for that period of time.**

N.T., 7/7/04, at 7 (emphasis added). Moreover, the trial court found that Appellant did

not object to the listing of this case as a protracted matter. *Id.* at 28–29. In light of these facts, this argument is not well taken.

**11.** Since it is clear that Appellant's trial took place before an extended run date, we need not analyze the entire record to determine whether the final run date is August 4, 2004 or some later date.

**12.** Appellant did not raise an argument under the Sixth Amendment of the United States Constitution or Article 1, § 9 of the Pennsylvania Constitution. Our Supreme Court has held that analysis of a defendant's constitutional right to a speedy trial is to be conducted separately from Rule 600 analysis. *Commonwealth v. DeBlase*, 542 Pa. 22, 665 A.2d 427, 431 (1995).

the Commonwealth not already continued the case twice before. The Commonwealth requested the continuances due to a missing witness, but later permitted the hearing, as well as the trial, to go forward, without that same witness. These unnecessary delays show a lack of due diligence on the part of the Commonwealth, ultimately denying Ramos his right to a speedy trial.

¶ 2 One is reminded of the quote from Attorney Brendan V. Sullivan in the 1987 Oliver North hearings, when, after he was criticized for making an objection, Sullivan responded, "I'm not a potted plant. I'm here as a lawyer. That's my job."

¶ 3 I believe the only way to sustain the Commonwealth's argument is for the Philadelphia District Attorney's Office to take the position that it is only a "potted plant," and has no responsibility to do anything when there are untoward continuances. The charge here was that Ramos drove away in his car after a police officer stopped him, hitting the officer's bicycle and bruising the officer, causing him to miss a week of work. The initial stop came after a woman signaled the officer to pull Ramos over. This woman is the civilian witness who did not show up at the preliminary hearings, which is why the Commonwealth requested the continuances. In fact, she *never* showed up and ultimately the preliminary hearing and trial proceeded without her.

¶ 4 Moreover, when an arraignment was finally held on April 14, 2004, the Commonwealth acquiesced to a trial date almost a month beyond what was universally believed to be the adjusted run date. I cannot see how this equates to due diligence. Accordingly, I must dissent.

¶ 5 I certainly am aware that in the real world of the Philadelphia courts a preliminary hearing cannot be held in every case within ten days. But I am also aware that in the real world of the Philadelphia courts, the District Attorney has many options other than remaining silent when preliminary hearings get continued for months at a time, ·causing the trial to be ultimately listed beyond the run date. The District Attorney can point out to the judge that there have been multiple listings of the preliminary hearing and this case needs an expedited date, or at least not a date thirty times longer than what the rule requires. The District Attorney could have done much earlier what was ultimately done, allowing the case to proceed without the "missing" civilian witness.

¶ 6 The Commonwealth's repeated requests for a continuance due to the essential nature of the absent witness starkly contrasts with the Commonwealth's eventual acceptance at the preliminary hearing that this witness was no longer necessary. On appeal, the Commonwealth ignores the preliminary hearing delays, focusing instead on the arraignment that finally occurred on April 14, 2004. According to the Commonwealth, it acted with due diligence because it was prepared for trial at this point. The Commonwealth argues that, under *Commonwealth v. Mines,* due diligence must be evaluated according to the last listing before the run date. 797 A.2d 963, 965 (Pa.Super.2002). But a more recent decision, *Commonwealth v. Kearse,* distinguishes *Mines* and explains that the *Mines* holding was tailored to its facts, where the only disputed listings in the case were the last two prior to the run date. 890 A.2d 388 (Pa.Super.2005). This Court in *Kearse* clarified that:

> [I]t appears that the notion that the Commonwealth had to prove that it acted with due diligence at the last listing before the run date and thereafter has been overruled by our Supreme Court in *Hawk, supra* where the Court, in examining a challenge to the trial court's

grant of an extension of time pursuant to 1100(c) stated, "we find that the Commonwealth should be held to the requirement that it exercise due diligence at all times during the pendency of a case." *Hawk*, 597 A.2d at 1145. To hold otherwise would defeat the purpose of Rule 600, allowing the Commonwealth to carelessly linger in the early stages of a case while providing a defendant with no recourse to effectuate his state and federal constitutional right to a speedy trial and the procedural mandates of Rule 600.

*Kearse*, 890 A.2d at 393.

¶ 7 While it is true that due diligence "does not require the Commonwealth to exercise every conceivable effort," the Commonwealth failed to show even a minimal effort in bringing Ramos to trial in a timely manner. *Commonwealth v. Wentzel*, 434 Pa.Super. 76, 641 A.2d 1207, 1209 (1994). The Commonwealth did not present any evidence as to what efforts had been made to locate the missing witness. Repeated oversights in locating a witness, with only a bare assertion that the witness was unavailable, have been sufficient to find that the Commonwealth lacked due diligence. *See Commonwealth v. Tyler*, 382 Pa.Super. 384, 555 A.2d 232, (1989) (unanswered phone calls and subpoenas returned unserved do not constitute due diligence in obtaining a witness).[13]

¶ 8 The inconsistency of the Commonwealth's requests raises doubt about its motives: if the witness was so essential to the preliminary hearing that the hearing had to be delayed twice, why did the Commonwealth suddenly allow the hearing, not to mention the trial, to proceed without that same witness? And if the Commonwealth ultimately allowed the case to proceed without the witness to prevent any further delays, why didn't the District Attorney speak up and request a trial date before the run date? At the arraignment, if the District Attorney had looked at the adjusted run date, he or she could have asked for a trial date before the rule ran. Instead, the District Attorney remained silent, causing the trial to take place after the run date and in violation of Ramos' right to a speedy trial.

¶ 9 For many years the only automatically "excludable" delay to adjust the run date has been delay caused by the defendant or his or her counsel. Court delay or continuances for the failure of a witness to appear have *not* been chargeable to the defendant, and have not been considered excludable time. The "due diligence" test only applies when at the time of a scheduled trial *within* the run date the Commonwealth is unable to proceed. In such cases. the prior delays were not held to be excludable and did *extend* the rule—"extendable time."

¶ 10 The majority believes that "extendable time," the 82 days between May 22 and August 12, 2003, carries the run date past the trial date, effectively making moot any argument regarding due diligence. The 82 days in question represents time between the status date of May 22 and the listing of the case for preliminary hearing as a "protracted case."[14] Although there

---

13. I realize that the charges in *Tyler* were not dismissed, due to the unique nature of the case: the delay was only one month past the run date (with the other 120 days requested by defendant) and the defendant was not prejudiced by the delay (he was actually trying to capitalize on it).

14. There is some confusion over what transpired on May 22, 2003. The Commonwealth claims that date was only a status date; the defense claims the continuance was due to the Commonwealth's failure to bring in witnesses. The record indicates that both are at least partially true. The official record indicates that the case was classified as protract-

is no case law addressing whether such a delay is properly considered to be "extendable time," the majority accepts, without comment or analysis, the contention that the "complexity of the case and the clogged trial docket" were circumstances beyond the Commonwealth's control and thus the trial court did not abuse its discretion in finding the 82 day period to be excusable pursuant to Rule 600(G).

¶ 11 The two problems with this are: 1) the record contains no evidence that the trial court docket was "clogged" to the point that a three month delay was required to list this case for a preliminary hearing; and 2) there is no proof that the case was in any way "complex" or required a "protracted" classification.

¶ 12 With regard to the first contention, there would appear to be something seriously wrong with the system in Philadelphia if, routinely, preliminary hearings were not scheduled for over three months when the rules call for the hearings to be scheduled within 10 days of arraignment. If the trial court is correct, then certain preliminary hearings are systematically scheduled at a period of time nine times longer than the rules suggest. I am unconvinced that such a routine delay should be countenanced by our Court, without comment or analysis, to the possible detriment of a defendant's constitutional rights.

¶ 13 Perhaps more importantly, there is absolutely no showing that this case was in any way a complex or protracted matter. In point of fact, the trial transcript in this case is comprised of 43 pages (from page 32 to page 75). A general rule of thumb is that a page of testimony represents a minute of time. This matter took less than one hour to try. Yet the trial court determined and the majority accepts the notion

that this represents a complex, protracted matter. I cannot accept the notion that a 45 minute trial, basically a simple car accident, represents a complex criminal trial issue. Further, there is nothing in the record to indicate that this matter was ever believed to be anything other than what it turned out to be, a simple and straightforward case.

¶ 14 In ruling on the 82 day delay the trial court made no finding as to what actually occurred. The trial judge stated:

No, I'm not finding that it's excludable, I'm not finding that it's anything. It's just non-time, it's just time that passed.

N.T. Motion to Dismiss, 7/7/04 at 28.

¶ 15 The court also stated:

I don't have enough information, I can only go by what I have. If there was a defense objection, you can be sure you would have slam dunked this. If there was a Commonwealth objection, you would be sure you would have had the time excludable. Because there's nothing, I can't make a determination. There's no fact for me to make it so I'm quashing. That's the best I can do and I'm sorry I can't be more articulate. But I don't have anything else to say.

*Id.* at 29.

¶ 16 The trial court admitted, in no uncertain terms, that it had no clear idea of what happened on May 22, 2003. It stated that it had no proof, one way or another, of who asked for the "protracted" classification and whether anyone objected to that classification and resulting delay. The lack of evidence supporting the contention that the 82 day delay was the unavoidable result of court scheduling and the complex

ed on 5/22 and that the Commonwealth failed to bring in witnesses. Contrary to the Majority's contention, the trial court did not find

that Ramos did not object to this classification. Rather, the trial court made no findings at all.

nature of the case, leads back to an examination of due diligence.

¶ 17 I note that until the second day of the hearing on the motion to dismiss pursuant to Rule 600,[15] the Commonwealth was operating under the belief that the 82 days in question were not extendable. A Rule 600 Tally Sheet was entered into evidence[16] that indicates only 16 days of time and no extendable time. The notes of testimony indicate that until July 7, 2004, the Commonwealth agreed that there were only 16 days at issue.

> Mr. Hochberg (Defense Counsel): Judge, I think they already agreed that they're 49 days over. Your honor found that they were not duly diligent. The issue, Your Honor, is that, well, Mr. Sabatina argued about prejudice, that's not part of the rule and he was going to do some research.
>
> The Court: Okay.
>
> Mr. Sabatina (Prosecutor): Your Honor, that is partially correct. It is correct as of yesterday. My position has changed, Your Honor.

N.T. Motion to Dismiss, 7/7/04 at 5.[17]

¶ 18 From this, it is clear that until the day of trial, the Commonwealth was operating under the belief that the 82 days now in question were neither excludable nor extendable. Not until its back was against the wall on the second day of the hearing did the Commonwealth think of arguing that this particular 82 days of time was available to extend the run date. Whether the Commonwealth was correct in this be-

lief is immaterial in analyzing whether the Commonwealth exercised due diligence. Throughout the process—when the Commonwealth did not believe it was entitled to extra time, where the Commonwealth repeatedly asked for continuances to produce a witness it patently did not need, and up to the point that the trial was scheduled past the run date—the Commonwealth remained silent about the speedy trial problem. In essence, the Commonwealth remained a potted plant. This cannot equate to due diligence.

¶ 19 Given that it is the Commonwealth's burden to show it exercised due diligence and that the trial date is the earliest date available, *Commonwealth v. Lafty*, 333 Pa.Super. 428, 482 A.2d 643 (1984), and because there is no requirement that a defendant object to such a delay, *Commonwealth v. Hunt*, 858 A.2d 1234 (Pa.Super.2004), I cannot see how the trial court concluded that the Commonwealth met its burden. Similarly, I cannot agree with the majority that the delay was proper. Therefore, I respectfully dissent.

---

**15.** The second day of the hearing on the motion is also the trial date.

**16.** It is unclear how the document came to be in the official record. It appears that the Tally Sheet was filled in by the defense, but references to the origin of the document in the notes of testimony are oblique.

**17.** On pages 7 and 11 of the notes, defense counsel makes additional references to the fact that the Commonwealth had previously agreed that the 82 days were not extendable.