J-S68022-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RON LARKIN, | : | |
| | : | |
| Appellant | : | No. 1487 EDA 2014 |

Appeal from the PCRA Order April 9, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No(s): CP-51-CR-0016013-2010
CP-51-CR-0016014-2010

BEFORE:  BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED NOVEMBER 12, 2015**

Ron Larkin ("Larkin") appeals pro se from the April 9, 2014 order entered by the Philadelphia County Court of Common Pleas dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").  Upon review, we affirm.

The facts of the case, as summarized by the Commonwealth during Larkin's guilty plea colloquy, are as follows:

> If the Commonwealth were to proceed on this matter, the Commonwealth would call Julius Irvin, who would testify that on August 1, 2010, at approximately 1:17 a.m., he was inside of his [a]unt Dorothy Flora's residence at 4667 Leiper Street. … At that time, [Larkin] was also inside.  … [Larkin] was arguing with [Flora]. … Shane Ferguson, who was the son of [Flora], was saying that ["Larkin] was starting his shit again.["]

[] Irvin observed [Larkin] with a gun standing at the porch that connects to the bedroom of … Ferguson.  [Flora] arrived on location and told her boyfriend[, Larkin,] to leave.

[Larkin] wanted money before he left, and [] Flora told [] Irvin where the money was to give to [Larkin].  Irvin then drove [Larkin] away from the area and dropped him off at [the corner of] Charles [Street] and Pratt [Street].

Before exiting, [Larkin] gave the money to Irvin to give back to [] Flora.  Irvin went back to Leiper Street and helped clean up the house with [] Ferguson and [] Flora.

[] Flora told Irvin that [Larkin] threatened to kill her and everyone in the house.  [Flora] told [] Irvin that [Larkin] called and was coming back to get his money.

Approximately two minutes later, Irvin was in the bathroom when he heard five [gunshots], a pause, then another five gunshots.  He exited 4667 Leiper Street through the bathroom window.  [] Irvin tried to contact both decedents by cell phone with negative results.  He then went to the side door of the house and observed [] Ferguson on the first floor in a pool of blood.  [] Irvin then called 911, and he positively identified [] Larkin as the [perpetrator].

The police responded, 15th District, to the location, where they observed the dead bodies of Shane Ferguson, [age twenty-five], and Dorothy Flora [age fifty-four], inside of the property.  Both victims were suffering from multiple gunshot wounds and were pronounced dead at the scene by Medic 47-B at 1:25 a.m.

On August 1, 2010, the Norristown Police Department contacted [Philadelphia] Homicide Division and stated that they had [] Larkin, who stated that the Philadelphia Police Department was

- 2 -

> looking for him. He was picked up by Philadelphia Homicide Detectives, and he was transported back to Philadelphia, where he was read his constitutional warnings and gave an inculpatory statement admitting to shooting both Shane Ferguson and Dorothy Flora after a previous argument with [] Flora, his girlfriend.
>
> Medical Examiner Chase Blanchard would testify that … [for both victims,] the cause of death was multiple gunshot wounds and the manner of death was homicide.
>
> Detective Steven Buckley would testify that he took a statement from [] Larkin on August 1, 2010, beginning at approximately 8:39 p.m. and ending at approximately 8:52 p.m., during which time [Larkin] did admit to the shooting death of Dorothy Flora and Shane Ferguson.
>
> In addition, the Commonwealth would submit a certificate of non[-]licensure, which would show that a record check for [Larkin] on August 1, 2010 would show that he did not have a valid license to carry firearms issued under the provisions of Section 6109 of the Crimes Code, nor did he have a valid sportsman's firearms permit issued under the provision of Section 6106[(c)] of the Crimes Code.

N.T., 1/3/12, at 15-21.

On January 3, 2012, Larkin entered a negotiated guilty plea to two counts of first-degree murder and one count of carrying a firearm without a license.[1] In return for Larkin's guilty plea, the Commonwealth nol prossed charges of burglary, criminal trespass, carrying firearms on the public

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106.

- 3 -

streets in Philadelphia, and possessing an instrument of crime.[2] The Commonwealth further agreed not to seek the death penalty in connection with Larkin's murder convictions. Following an extensive colloquy, during which Larkin admitted the above facts as recited by the Commonwealth, the trial court accepted his guilty plea. It sentenced him on the murder charges pursuant to the plea agreement to life in prison without the possibility of parole. It further sentenced him to a concurrent term of three and a half to seven years of imprisonment for the firearms violation.

Larkin did not file a direct appeal. On November 9, 2012, he filed a timely pro se PCRA petition. Therein, he raised claims of ineffective assistance of counsel based upon plea counsel's failure to: (1) file a motion to dismiss the charges pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure; (2) provide Larkin with all discovery; (3) advise Larkin of grounds upon which to suppress the statement he gave to police; (4) investigate or advise Larkin of potential defenses, including self-defense, voluntary intoxication and diminished capacity; and (5) object to what Larkin believed was a defective guilty plea colloquy. PCRA Petition, 11/9/12, at 7. The PCRA court appointed counsel, who, on February 22, 2014, filed a no-merit letter and petition to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

---

[2] 18 Pa.C.S.A. §§ 3502(a), 3503(a)(1)(i), 6108, 907(a).

On February 26, 2014, the PCRA court issued notice of its intent to dismiss Larkin's PCRA petition without a hearing pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure based upon its conclusion that the issues raised in Larkin's PCRA petition had no merit. On March 19, 2014, Larkin filed a pro se request for an extension of time to file his response to the PCRA court's Rule 907 notice. On March 20, 2014, Larkin filed a pro se request for the production of discovery material and the transcript of his guilty plea and sentencing proceeding.

On April 9, 2014, the trial court denied his request for production, granted PCRA counsel's petition to withdraw, and dismissed Larkin's PCRA petition. Larkin filed a timely pro se notice of appeal. He raises two issues for our review:

> [1.] Whether the PCRA court erred as a matter of law and/or abused its discretion in denying and/or otherwise dismissing without a hearing [Larkin]'s claim that trial counsel was ineffective for failing to move for dismissal of the charges against [Larkin] based upon violation of Pa.R.Crim.P. 600?
>
> [2.] Whether the PCRA court erred as a matter of law and/or abused its discretion in denying and/or otherwise dismissing without a hearing [Larkin]'s claim that trial counsel was ineffective for failing to advise [Larkin] of grounds to suppress incriminating evidence, namely an inculpatory statement allegedly given to police by [Larkin]?

Larkin's Brief at 4.

We review a PCRA court's decision according to the following standard:

> In conducting review of a PCRA matter, we consider the record in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the evidence of record and the factual findings of the PCRA court. This Court will afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. Thus, when a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. Of course, if the issue pertains to a question of law, our standard of review is de novo and our scope of review is plenary.

*Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (internal citations, quotation marks and italicization omitted).

Both of the issues Larkin raises on appeal are claims of plea counsel's ineffectiveness. To prevail, Larkin had the burden of pleading and proving before the PCRA court that (1) the claim is of arguable merit; (2) in acting/failing to act, plea counsel had no reasonable basis designed to protect the defendant's interest; and (3) the defendant suffered prejudice by counsel's ineffectiveness – in other words, but for counsel's act or omission, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014).

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant

enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made. Moreover, with regard to the prejudice prong, where an appellant has entered a guilty plea, the appellant must demonstrate it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial.

**Commonwealth v. Timchak**, 69 A.3d 765, 769-70 (Pa. Super. 2013) (internal citations, quotation marks and formatting omitted).

Larkin's first issue challenges plea counsel's failure to file a motion to dismiss the charges pursuant to Pa.R.Crim.P. 600. The PCRA court found this issue to be meritless, because "[a]lthough [Larkin]'s case was called for trial approximately 519 days after his arrest, only sixty-five days were chargeable to the Commonwealth." PCRA Court Opinion, 5/27/14, at 7-8. Larkin contends that the PCRA court's conclusion is not supported by the record, as the notes of testimony from the continued proceedings are not contained in the certified record on appeal, which required the PCRA court to hold an evidentiary hearing on this issue. Larkin's Brief at 13-14. Larkin further asserts that although it appears that many of the continuances in the case were at defense counsel's request, the continuances were predicated upon the Commonwealth's failure to provide defense counsel with discovery,

rendering this time not excludable for Rule 600 purposes. *Id.* at 16-17. Because a successful motion pursuant to Rule 600 would result in the dismissal of the charges, Larkin states that counsel could have had no reasonable basis for failing to file the motion and that he necessarily was prejudiced by counsel's failings in this regard. *Id.* at 18-19.

The version of Rule 600 that was in place at the time of Larkins' plea hearing stated,[3] in relevant part:

> [(A)](3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
>
> \* \* \*
>
> (C) In determining the period for commencement of trial, there shall be excluded therefrom:
>
>> (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;
>>
>> (2) any period of time for which the defendant expressly waives Rule 600;
>>
>> (3) such period of delay at any stage of the proceedings as results from:
>>
>>> (a) the unavailability of the defendant or the defendant's attorney;

---

[3] A new version of Rule 600 was adopted October 1, 2012, and became effective on July 1, 2013.

(b) any continuance granted at the request of the defendant or the defendant's attorney.

\* \* \*

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 600(A)(3), (C), (G) (rescinded October 1, 2012, effective July 1, 2013).

[T]he courts of this Commonwealth employ three steps – corresponding to Rules 600(A), (C), and (G) – in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(G). As we have explained, Rule 600(G) encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600(G) extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. Super. 2007) (internal citations and footnote omitted).

Our review of the certified record reveals that, as stated by Larkin, it does not contain transcripts from the continued proceedings. The criminal docket, however, contains the text of the trial court's orders granting the continuance requests, including the basis for the continuance and whether or not the time was ruled to be excludable under Rule 600. Thus, we disagree with Larkin that remand is necessary to determine whether the time was excludable for Rule 600 purposes.

The Commonwealth filed the criminal complaint in this case on August 3, 2010, making the mechanical run date under Rule 600(A)(3) August 3, 2011. *See* Pa.R.Crim.P. 600(A)(3). On February 15, 2011, and again at the rescheduled date of March 16, 2011, counsel for Larkin requested continuances to further investigate the matter. Criminal Docket at 5-6. The

trial court rescheduled the trial for May 25, 2011 and in both instances ruled the time excludable under Rule 600. *Id.*

The defense requested a continuance on May 25, 2011 "for further negotiations with the Commonwealth." *Id.* The trial court rescheduled the matter for June 28, 2011 and deemed the time excludable under Rule 600. *Id.*

On June 28, 2011, lead counsel for Larkin requested permission to withdraw, which the trial court granted, appointed another attorney as lead counsel and concomitantly granted the defense motion for a continuance to permit further investigation. *Id.* at 7. The trial court rescheduled the matter for July 27, 2011 and ruled the time excludable under Rule 600. *Id.*

Both the July 27, 2011 and subsequently scheduled August 24, 2011 hearings were continued at defense counsel's request to allow for "further penalty phase investigation." *Id.* The trial court rescheduled the matter for September 22, 2011 and ruled the time excludable under Rule 600. *Id.*

Prior to the next scheduled date, on September 20, 2011, counsel for Larkin filed a motion for a continuance, indicating that counsel was ill. *Id.* at 8. The trial court granted the motion, rescheduled the matter for October 18, 2011, and deemed the time excludable under Rule 600. *Id.*

Both the October 18, 2011 and subsequently scheduled November 15, 2011 dates were continued for the Commonwealth to determine whether it

would seek to impose the death penalty. *Id.* In both instances, the time was "ruled excludable by agreement." *Id.*

At the next scheduled date, December 15, 2011, defense counsel requested a continuance to determine whether Larkin would accept the Commonwealth's offer and enter a guilty plea. *Id.* The trial court ruled the time excludable and set the hearing date for January 3, 2012, which was the date Larkin ultimately pled guilty, as described hereinabove. *Id.*

The record reflects that of the 518 days that passed from the filing of the complaint to the date of the guilty plea hearing, 322 days were excludable under Rule 600, bringing the adjusted run date from August 3, 2011 to June 20, 2012. *See* Pa.R.Crim.P. 600(C)(3); *Ramos*, 936 A.2d at 1103. As Williams' guilty plea hearing occurred on January 3, 2012, there was no Rule 600 violation. We therefore agree with the PCRA court that Larkin's claim that counsel was ineffective for failing to file a motion to dismiss his charges pursuant to Rule 600 is meritless.

In his second issue on appeal, Larkin asserts that plea counsel was ineffective for failing to inform him that he could have filed a motion to suppress his statement to police. Larkin's Brief at 19-21. According to Larkin, counsel was aware that at the time Larkin spoke to police, he "had been in custody for a number of hours, was not advised of his rights as required by Miranda v. Arizona, 384 U.S. 436 (1966), and was severely sleep deprived." Larkin's Brief at 19. Larkin further states that he was

"induced" to plead guilty because of the confession he gave to the police. *Id.* at 19-20. The PCRA court found this argument to be meritless. PCRA Court Opinion, 5/27/14, at 6.

Our review of the record once again supports the PCRA court's decision. There is nothing in the record to support a finding that Larkin's statement was not voluntarily given. He never contended below – either before the trial court or the PCRA court – that he was sleep deprived, had been in custody for an excessive amount of time, or not provided his *Miranda* warnings prior to giving his statement to the police. To the contrary, during his guilty plea colloquy, he admitted that prior to giving the inculpatory statement to Philadelphia Homicide Detectives, "he was read his constitutional warnings[.]" N.T., 1/3/12, at 17, 23. We reiterate that Larkin had the burden to plead and prove the grounds for counsel's ineffectiveness. *See Bomar*, 104 A.3d at 1188. He failed to do so. As such, counsel cannot be found to have rendered ineffective assistance on this basis.

Order affirmed.

Bender, P.J.E. joins the Memorandum.

Mundy, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2015