2019 PA Super 204

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LEWIS MOORE | : | |
| | : | |
| Appellant | : | No. 1980 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 30, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003531-2017

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY LAZARUS, J.:                              **FILED JULY 01, 2019**

James Lewis Moore appeals from the judgment of sentence, entered in the Court of Common Pleas of York County, after a jury convicted him of possession of child pornography[1] and dissemination of child pornography.[2] On appeal, Moore challenges the trial court's denial of his motion to dismiss pursuant to Pa.R.Crim.P. 600.  Upon careful review, we affirm.

The trial court set forth the factual and procedural history of this matter as follows:

> On April 10, 2017, Officer Tiffany Pitts of the York City Police Department[] commenced an investigation of [Moore] at the request of the [Pennsylvania State Police ("PSP")]—Megan's Law Division.  According to the PSP, an identified tipster alerted them that [Moore] owns a Facebook social media account, which could potentially be in violation of 18 [Pa.C.S.A.] § 4915.1 since [Moore]

---

[1] 18 Pa.C.S.A. § 6312(d).

[2] 18 Pa.C.S.A. § 6312(c).

---

*   Former Justice specially assigned to the Superior Court.

had not reported having a cell phone or social media account to the PSP.[4]

> [4] In 2009, [Moore] entered guilty pleas in federal court to child pornography offenses[.]  He was released from federal custody July 22, 2016, and required to register as a sex offender.

On April 25, 2017, after reviewing the questionable Facebook account which indicated the user's familial relationship with a known relative of [Moore], Officer Pitts secured a Facebook warrant from the Honorable [] Gregory Snyder which, upon execution, unveiled child pornography within private inbox messages.  Immediately thereafter, Officer Pitts secured an electronics device warrant from [] Magisterial District Judge Joel N. Toluba.  When Officer Pitts executed the search warrant the same afternoon at [Moore's] residence located at the LifePath,[3] . . . [Moore] was seated in the shelter's common area next to a cell phone he admitted belonged to him which was charging in an adjacent outlet.  Officer Pitts **Mirandized** [Moore]; however, he made statements indicating that he was unsure whether his phone contained anything illegal.  The officers seized [Moore's] phone and three additional non-functional cell phones located in [Moore's] personal storage area near where he slept.

The following day, [Moore] phoned his federal probation officer to confess that he had been untruthful to him in the past and that he was indeed in ownership of a cell phone that was confiscated by police the day before.  He also admitted owning a Facebook account and surfing the internet using Wi-Fi.  A forensic analysis of [Moore's] cell phone was completed on April 27, 2017, and revealed additional child pornography.  [Moore] was swiftly placed under arrest.

Trial Court Opinion, 2/11/19, at 2-3.

Moore was formally charged by criminal complaint filed on April 27, 2017.  On July 5, 2018, he filed a motion to dismiss pursuant to Rule 600. After a hearing held on July 9, 2018, the trial court denied Moore's motion and

---

[3] LifePath Christian Ministries provides homeless individuals in the City of York with food, shelter, clothing, and medical care, as well as other programs and services.  https://lifepathyork.org/services/ (last visited 6/19/19).

he immediately proceeded to trial, after which a jury convicted him of the above offenses. Sentencing was deferred until August 28, 2018, and was subsequently continued until October 30, 2018, as a result of continuances requested by the Commonwealth and the defense. While Moore's sentencing was pending, on August 14, 2018, the Commonwealth filed notice of its intent to seek a mandatory minimum sentence of 25 years' incarceration pursuant to 42 Pa.C.S.A. § 9718.2.[4]

On October 30, 2018, the trial court sentenced Moore to two concurrent, mandatory sentences of 25 to 50 years' imprisonment. Moore filed post-sentence motions, which were denied by the court on November 2, 2018. Moore filed a timely appeal, followed by a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He raises the following question for our review:

> The Commonwealth failed to bring [Moore's] case to trial within the time limits of [Rule] 600. The trial court erred when it counted time for a continuance issued by the district judge as excusable delay. The district judge provided no reason for the continuance, thus there is no evidence that the continuance was based on judicial delay. That time was, therefore, not excludable time and caused [Moore's] case to go over the Rule 600 time. The Commonwealth was not diligent in bringing [Moore's] case to trial.

---

[4] Section 9718.2 provides that a person who is convicted of an offense enumerated in 42 Pa.C.S.A. § 9799.14 (relating to sexual offenses and tier system) "shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement[.]" 42 Pa.C.S.A. § 9718.2.

The trial court's order denying [Moore's] motion to dismiss based on Rule 600 should be reversed.

Brief of Appellant, at 4 (unnecessary capitalization omitted).

Our standard and scope of review in analyzing a Rule 600 issue are both well-settled.

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . ., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134–35 (Pa. Super. 2011),

quoting *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007).

Rule 600 provides, in relevant part, as follows:

**Rule 600. Prompt Trial**

(A) Commencement of Trial; Time for Trial

. . .

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

. . .

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . .

Pa.R.Crim.P. 600.

Generally, Rule 600 requires that a defendant be brought to trial within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). However, a defendant is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. *Commonwealth v. Goldman*, 70 A.3d 874, 879 (Pa. Super. 2013). Rather,

Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." *Id.* The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable time and excusable delay. *Id.* "Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. *Commonwealth v. Roles*, 116 A.3d 122, 125 (Pa. Super. 2015). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Armstrong*, 74 A.3d 228, 236 (Pa. Super. 2013) (citation omitted). Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. *Commonwealth v. Ramos*, 936 A.2d 1097, 1102 (Pa. Super. 2007). Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

Here, the complaint was filed on April 27, 2017. Accordingly, the mechanical run date was April 27, 2018. It is undisputed that Moore requested a continuance of his pre-trial conference, resulting in 64 days of excludable

time and bringing his adjusted run date to June 30, 2018. Moore was brought to trial on the first day of the court's next trial term, July 9, 2018.[5]

At issue in this matter is an additional 24-day period of delay caused by a continuance of Moore's preliminary hearing, ordered *sua sponte* by the magisterial district justice ("MDJ"). The Commonwealth argues, and the trial court found, that this period constituted excusable delay, as it was beyond the Commonwealth's control. Moore, however, argues that the inquiry must not end with the fact that the delay was ostensibly attributable to the court. Rather, Moore asserts the Commonwealth must also demonstrate that it exercised due diligence in bringing Moore to trial. Moore claims that the Commonwealth failed to exercise the necessary due diligence and that his case should have, accordingly, been dismissed.

Moore relies on our Supreme Court's recent decision in ***Commonwealth v. Mills***, 162 A.3d 323 (Pa. 2017), in support of his claim. The question before the Court in ***Mills*** was, specifically, whether 174 days between the filing of the criminal complaint and a status conference should be excluded or included for Rule 600 purposes and, more broadly, the proper meaning of the word "delay" as used in the rule. The Commonwealth argued that, based on the 2012 revisions to Rule 600, it was essentially afforded "leeway to proceed, without any diligence, to cause up to 365 days of delay in the commencement

---

[5] The criminal division of the Court of Common Pleas of York County operates on an every-other-month trial term. The terms relevant to this matter were November 2017, January 2018, March 2018, May 2018 and July 2018.

- 7 -

of any trial." *Id.* at 324. In response, Mills asserted that "by attempting to fairly account for 'delay' within the contours of the prompt-trial rule, [the Supreme] Court never meant to transform its requirements to effectively toll the 365-day period throughout all periods of trial preparation." *Id.* Rather, Moore argued, "[t]he concept of 'delay' refers to the passage of a period of time that is outside of the ordinary, routine and expected passage of time." *Id.*

The Court rejected the Commonwealth's argument that the normal progression of a case constitutes "delay" excludable from the Rule 600 computation. Rather, the Court left to the trial courts' discretion the task of "differentiat[ing] between time necessary [for] ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns." *Id.* The Court acknowledged the inevitability of delays caused by busy court calendars, and noted that "where a trial-ready prosecutor must wait several months due to a court calendar, the time should be treated as 'delay' for which the Commonwealth is not accountable." *Id.* at 325.

In a concurring opinion, Justice Wecht emphasized the overarching importance of the Commonwealth's due-diligence obligations, noting that "due diligence must be proven by the Commonwealth, and assessed by the court, before 'judicial delay' becomes a consideration in the time calculation[.]" *Id.* at 326 (Wecht, J., dissenting). "Only if the Commonwealth has discharged its duties with due diligence should a court consider other causes for the delay." *Id.*

Here, we can find no reason to disturb the trial court's finding that the Commonwealth acted with sufficient due diligence in bringing Moore to trial and, thus, the *sua sponte* continuance by the MDJ constituted excusable delay. As was testified to at the Rule 600 hearing, the Commonwealth was faced with significant uncertainty throughout much of the pendency of this matter, which was exacerbated by the every-other-month availability of the court for jury trials in York County. Early on, Moore was unavailable for pre-trial proceedings due to the fact that he was in federal custody while the federal government considered bringing charges against him.[6] ***See*** N.T. Rule 600 Hearing, 7/9/18, at 16. The Commonwealth presented testimony that both the assistant district attorney and Detective Pitts were in regular contact with federal prosecutors regarding the status of that matter. ***See id.*** at 8, 20, 28. In addition, Teresa Jauregui, Esquire, the prosecutor who was originally handling the case, was responsible for trying numerous cases with more pressing Rule 600 issues that took priority over Moore's case during the November, January and May trial terms. ***See id.*** at 16-18. When it became clear that Moore's case would need to be tried during the July term, Attorney Jauregui arranged for current counsel to take over due to her caseload. ***See id.*** at 19.

Moreover, the Commonwealth's witnesses in this matter, Detective Pitts, the affiant, and Jeff Ziegler, National Guard Phone Analyst, both had

---

[6] The federal government ultimately decided not to prosecute Moore.

issues with unavailability. Beginning in January 2018, Detective Pitts had substantial periods of unavailability due to both personal and professional circumstances, as well as military reserve obligations. Specifically, Detective Pitts' husband, also a police officer, was shot in the line of duty on January 18, 2018, resulting in her frequent absence from work to care for him. *See id.* at 8, 13. Detective Pitts was also scheduled for military deployment in May, which prevented Attorney Jauregui from listing the case on the May trial calendar. *See id.* at 7. By the time Detective Pitts learned in early May that she would not be deployed, it was too late to list the case for that month. *See id.* at 18. Detective Pitts also attended police department trainings in May. *See id.* at 13.

In addition, Attorney Jauregui became aware that the Commonwealth's cell phone analyst, Mr. Ziegler, would have very limited availability during the July trial term. *See id.* at 18-19. As a result, Attorney Jauregui contacted another analyst to perform a separate analysis so that the case would be prepared to proceed regardless of Mr. Ziegler's availability. *See id.* at 19.

At the conclusion of the Rule 600 hearing, the trial court made the following findings:

> We have had though today much more additional testimony regarding other issues regarding due diligence on the part of the Commonwealth, including the availability or unavailability, as it [were], of Detective Tiffany Pitts both because of her military service and because of her husband's injury, for which she took a period of Family Medical Leave.

- 10 -

We have also heard testimony regarding the initial analysis by Mr. Zeigler[7] and then a second analysis by Mr. Goodfellow of evidence that would be used at the time of trial.

We have also heard the testimony, and I'm quite familiar with the date certain schedule of the prior prosecutor, Attorney Jauregui, as most of the cases that she mentioned in her testimony were cases heard before this [c]ourt on date certain trials during the November and January terms, as well as those that were previously scheduled in May and either were moved to make others of greater Rule 600 priority available or, in fact, listed for trial only to again at the last minute be resolved prior to the trial term when no other trials could be added to the list.

Based on all the testimony we've heard today, we are now convinced that the Commonwealth did exercise due diligence in bringing this matter to trial and, therefore, the motion for dismissal pursuant to Rule 600 is denied.

*Id.* at 35-36.

In light of all the foregoing, we can discern no abuse of discretion in the trial court's finding that the Commonwealth exercised due diligence throughout the pendency of this matter. The testimony demonstrated that both Attorney Jauregui and Detective Pitts made diligent efforts to maintain regular contact with each other and to monitor and address any issues potentially impacting Moore's speedy trial rights under Rule 600. As this Court has repeatedly stated, "[d]ue diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Booze*, 947 A.2d 1287, 1290 (Pa. Super. 2008). The Commonwealth met that threshold in this matter.

---

[7] The correct spelling of the phone analyst's name is unclear from the record. It is spelled "Ziegler" in the affidavit of probable cause and the notes of testimony, but "Zeigler" in the trial court opinion.

Accordingly, the trial court acted within its discretion in treating the 24 days resulting from the MDJ's *sua sponte* continuance as excusable delay and denying Moore's motion to dismiss. **See Mills**, **supra**.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/1/2019