J-S56011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEFFREY JOSEPH PERSAVAGE, JR., | |
| Appellant | No. 2031 MDA 2015 |

Appeal from the Judgment of Sentence Entered September 1, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005511-2013

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED OCTOBER 12, 2016**

Appellant, Jeffrey Joseph Persavage, Jr., appeals from the judgment of sentence of an aggregate term of 6 to 12 years' incarceration, imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID), 35 P.S. §§ 780-113(a)(30), and conspiracy to commit PWID, 18 Pa.C.S. § 903(a)(1).  After careful review, we affirm.

Appellant was convicted of the above-stated offenses based on evidence that he agreed to sell $9,000 worth of cocaine to a confidential informant (CI).  Appellant and a cohort, Joshua Seedor, arrived in the area of the prearranged drug-delivery location and were arrested.  A subsequent search of Appellant's vehicle revealed the quantity of cocaine Appellant had

_____

[*] Former Justice specially assigned to the Superior Court.

agreed to sell to the CI.  Appellant also had in his possession a large amount of cash and the cell phone that was used to set up the transaction with the CI.

Following his convictions for PWID and conspiracy, Appellant was sentenced to concurrent terms of 6 to 12 years' imprisonment for each offense.  He filed a timely post-sentence motion, which was denied after a hearing.  Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The trial court subsequently filed a Rule 1925(a) opinion addressing the following four questions presented by Appellant on appeal:

> I. Did the trial court abuse[] its discretion when it denied [] Appellant's motion to dismiss pursuant to [Pa.R.Crim.P] 600, where it failed to make a determination as to the Commonwealth's exercise of due diligence?
>
> II. Did the trial court abuse[] its discretion when it denied [] Appellant's motion to suppress the evidence derived from the warrantless stop of his vehicle and detention of it's [*sic*] driver without reasonable suspicion and the warrantless arrest of [] Appellant without probable cause?
>
> III. Did the trial court abuse[] its discretion when it denied [] Appellant's demurrer based upon the defense of entrapment?
>
> IV. Did the trial court abuse its discretion when it denied defense counsel's objection to the Commonwealth's arguing facts not in evidence during its closing [argument]?

Appellant's Brief at 5 (unnecessary capitalization omitted).

In Appellant's first issue, he argues that the trial court erred by denying his pretrial, Pa.R.Crim.P. 600 motion to dismiss the charges against him. Our scope and standard of review for such claims is well-settled:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review ... is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society.
>
> …
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*)).

Rule 600(A)(2)(a) requires that trial commence within 365 days of the filing of the written complaint.

> The mechanical run date is the date by which the trial must commence under [Rule 600]. It is calculated by adding 365 days (the time for commencing trial under [Rule 600]) to the date on which the criminal complaint is filed. … [T]he mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.
>
> If the defendant's trial commences prior to the adjusted run date, we need go no further.

*Ramos*, 936 A.2d at 1102 (internal citation and footnote omitted).

In this case, Appellant only challenges the trial court's decision to charge the defense with a delay that spanned from July 17, 2013, to January 3, 2014. Appellant claims that the court failed to make a determination that the Commonwealth acted with due diligence during this period of time and, therefore, it erred by not counting this time-period for Rule 600 purposes. After review of the record, we disagree.

Briefly, on July 17, 2013, Appellant filed a *pro se* application for admission into the York County Drug Court program. *See* Trial Court Order, 2/4/15, at 1 (ruling on Appellant's Rule 600 motion to dismiss). Appellant did not inform his defense counsel that he had filed the application. He also failed to follow the filing directions on that document. In particular, Appellant did not file the application with the Adult Probation Office; instead, he only filed it with the York County Clerk of Courts. *Id.* at 1. Accordingly,

Appellant's application was not processed as it normally would have been. Notably, the District Attorney's Office did not receive a copy of that document from defense counsel or the Adult Probation Office, as per the usual procedure. *Id.* at 2. At some point, defense counsel became aware of Appellant's *pro se* application, and filed a motion to withdraw the application on January 2, 2014. That motion was granted on January 3, 2014. *Id.* at 2.

The trial court found that this delay was chargeable to the defense because, *inter alia*, the delay in processing Appellant's drug court application was caused by Appellant's *own failure* to follow the filing instructions on that document, which resulted in the District Attorney's Office never receiving a copy of the application. *Id.* at 3. Thus, the court concluded that the Commonwealth was not "negligent" in failing to act on the application. *Id.*

We conclude that the court's assessment of Appellant's Rule 600 issue is sufficient to demonstrate that the court analyzed whether the Commonwealth acted with 'due diligence' in prosecuting Appellant's case. Ultimately, the court determined that the Commonwealth had not acted on Appellant's application because Appellant had failed to follow the instructions for filing that document. Accordingly, Appellant's argument does not convince us that the court abused its discretion in denying his Rule 600 motion.

Next, Appellant challenges the trial court's denial of his pretrial motion to suppress. Our standard of review is as follows:

In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

***Commonwealth v. Hoopes***, 722 A.2d 172, 174-75 (Pa. Super. 1998).

Appellant filed a written motion to suppress on April 24, 2014, arguing that officers had no reasonable suspicion to conduct a traffic stop of his car and, therefore, the evidence subsequently recovered during the search of that vehicle should be suppressed as 'fruit of the poisonous tree.' ***See*** Omnibus Pretrial Motion, 4/24/14, at 2. On August 1, 2014, the suppression court conducted a hearing on Appellant's motion. The court summarized the evidence presented at that hearing, and its rationale for rejecting Appellant's suppression claim, as follows:

[Pennsylvania State] Trooper [Christopher] Keppel testified that on June 19, 2013, he met with a [confidential informant (CI)] and obtained information regarding [] Appellant. The CI was instructed to arrange to purchase 8 ounces of cocaine for a price of $9,000. The two agreed to meet in the Wendy's parking lot off of the Shrinestown exit of I-83. Detective Fenstermacher transported the CI to the buy location, but Trooper Keppel was there conducting surveillance. [Trooper Keppel] was aware of what [] Appellant looked like through JNET photographs. Trooper Keppel testified that this particular controlled buy was going to be a buy-bust; the CI was never going to meet with [] Appellant. Once [] Appellant arrived at the location he was going to be taken into custody immediately.

Officers were staged in several locations around the Wendy's parking lot and surrounding areas. Trooper Keppel testified that Detective Fenstermacher radioed that the target, [] Appellant], was actually waiting in the Rutter's parking lot. When Trooper Keppel observed [] Appellant he was standing next to the ice machine. Trooper Keppel saw a green vehicle in

the parking lot, and observed another individual leave in that car. Another office[r] followed that car, and ran the registration. When the registration came back to [] Appellant, Trooper Keppel gave the go ahead to stop the car and arrest the occupant[, later identified as Joshua Seedor].

A uniformed officer initially approached [Seedor], but Trooper Keppel followed shortly behind. At this point, [Seedor] was the only occupant of the vehicle. Trooper Keppel Mirandized [Seedor], and took him into custody. During this stop, Trooper Keppel was advised over the radio that [] Appellant had been taken into custody. A search warrant was obtained for the vehicle and troopers found cocaine in the glove box.

On cross-examination, Trooper Keppel testified that the CI was unsure if [] Appellant would be arriving alone. Trooper Keppel testified that it was the CI that informed him that [] Appellant would be arriving in a green vehicle; however, Trooper Keppel never saw [] Appellant in the vehicle. He did see [] Appellant in the area of the green vehicle right before it left the Rutters parking lot, though. Trooper Keppel clarified that he personally never saw [] Appellant in the car, but that other officers did.[1] On re-direct examination, Trooper Keppel stated that the green vehicle was stopped because it was [] Appellant's car, and [the] trooper[] believed it was used to transport drugs to the buy location.

The Commonwealth presented no further testimony, and the defense had no witnesses. Defense counsel argued that [] Appellant had been taken into custody, and therefore, the car was extraneous and officers did not have the authority to pull it over and search it. We disagreed. The defense presented no case law to support its argument, and we knew of no law prohibiting the police from furthering an investigation by stopping a vehicle. [] Appellant was seen near the vehicle during the time the drug buy was to occur, and the vehicle was registered to [] Appellant. The officers had reason to believe

---

[1] We point out that Trooper Keppel did not state when he was informed by the other officers that they had observed Appellant in the green car. *See* N.T. Suppression Hearing, 8/1/14, at 10. In other words, it is unclear if Trooper Keppel knew that officers had seen Appellant in the green car before the trooper ordered the stop of that vehicle.

that evidence of the crime would be found inside. Thus, we think based on the totality of the circumstances, the officers had every right to stop the vehicle and search it.

Trial Court Opinion (TCO), 2/10/16, at 5-6 (citations to the record omitted).

On appeal, Appellant challenges the court's determination that Trooper Keppel possessed reasonable suspicion to stop his vehicle. Before we address that argument, however, we note that he also claims that officers did not have probable cause to arrest him or Joshua Seedor. *See* Appellant's Brief at 17-19. Preliminarily, Appellant does not discuss why he has standing to challenge the legality of Seedor's arrest. In any event, even if he could raise such a claim, he has waived his assertion that Seedor's arrest was illegal, and he has also failed to preserve his challenge to the lawfulness of his own arrest. Appellant did not raise either of these claims in his counseled, written post-sentence motion filed on April 24, 2014. He also did not present any argument challenging his or Seedor's arrests at the suppression hearing. There, Appellant solely challenged the legality of the vehicle stop.

We acknowledge that after the court issued its order denying Appellant's motion to suppress, Appellant attempted to challenge the legality of his and Seedor's arrests in a *pro se* 'motion for reconsideration' filed on August 19, 2014. However, Appellant was represented by counsel at the time he filed that *pro se* motion and, therefore, it was a legal nullity. *See Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007) (concluding that the defendant "had no right to file a *pro se* motion because

he was represented by counsel" and, thus, the defendant's *pro se* "motion was a nullity, having no legal effect") (citing, *inter alia*, **Commonwealth v. Ellis**, 626 A.2d 1137, 1139 (Pa. 1993)). We also point out that our Supreme Court has deemed a claim waived where it was raised for the first time in a motion for reconsideration of a trial court's order, and the trial court did not address the issue. **See Commonwealth v. Spotz**, 18 A.3d 244, 320 (Pa. 2011). Here, the court held a hearing following Appellant's filing of his August 19, 2014 *pro se* motion. At that proceeding, Appellant was represented by a new, privately-retained attorney who, in very general terms, referenced Appellant's *pro se* 'motion for reconsideration' of the suppression court's ruling. The court declined Appellant's reconsideration request. **See** N.T. Hearing, 10/29/14, at 6-7 (defense counsel's stating that Appellant "would like to pursue the issue of reconsideration," to which the court responded, "[t]hat's not going to happen"). Therefore, the court never ruled on the merits of Appellant's untimely attempt to challenge the legality of his and Seedor's arrests. Under these circumstances, we deem these claims waived. **See Spotz, supra**.

In regard to Appellant's preserved challenge to the legality of the stop of his vehicle, he maintains that Trooper Keppel lacked reasonable suspicion to effectuate the traffic stop, stating:

> Applying the reasonable suspicion standard to the facts in the instant case, it is clear that the police decided to execute the stop of the green vehicle registered to [] Appellant because the facts that were provided by their … [CI] had not yielded any illegal activity. The car had not arrived at the predicted location.

[] Appellant was already in custody, but nothing illegal had been discovered. The officers had not observed the vehicle engaged in any illegal activity and they did not know the identity of the driver. The police actions in stopping the vehicle was little more than a "fishing expedition" in a last ditch attempt to justify a botched investigation. When the police execute a vehicle stop on nothing more than a hope or hunch that criminal activity will be uncovered, all evidence derived from such a stop must be suppressed "as fruit of the poisonous tree[."]

Appellant's Brief at 16-17.

Appellant's argument is unconvincing. It is clear that Trooper Keppel stopped Appellant's vehicle to conduct further investigation and, therefore, he was required to possess reasonable suspicion that the car was involved in criminal activity. **See Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (holding that for officers to stop a vehicle for a "stated investigatory purpose[,]" they must possess reasonable suspicion of "either criminal activity or a violation of the Motor Vehicle Code"). Based on the totality of the circumstances known to Trooper Keppel before ordering the vehicle stop, we conclude that the trooper had reasonable suspicion that the green car was involved in criminal activity - namely, Appellant's intended drug delivery to the CI. Specifically, Trooper Keppel was present when the CI and Appellant agreed, in phone conversations, to engage in a drug transaction. Appellant told the CI he would sell him/her 8 ounces of cocaine in exchange for $9,000. The CI and Appellant agreed to meet at a certain place and time. The CI believed Appellant would arrive in a green car. The CI's information pertaining to the drug transaction was corroborated, at least in some part, when Appellant arrived at the scheduled meeting time at a gas

station across the street from the decided-upon location. Additionally, Appellant was observed standing in close proximity to a green car. When that car left the parking lot, Trooper Keppel followed it, ran the tags, and confirmed that the car was registered to Appellant. Before stopping the vehicle, Trooper Keppel was informed that Appellant had been placed under arrest. Appellant stresses that no evidence of the pre-arranged drug transaction was found on his person. In our view, this fact *bolsters* the reasonableness of Trooper Keppel's suspicion that contraband, *i.e.*, cocaine, would be found inside Appellant's car. Based on these facts, it was reasonable for Trooper Keppel to stop and detain Appellant's car until he could obtain a warrant to search that vehicle. Thus, Appellant's second issue is meritless.

In Appellant's third issue, he contends that the evidence was insufficient to prove that he committed PWID or conspiracy, as he established the defense of entrapment 'as a matter of law.' To begin, we note our standard of review of a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno,* 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell,* 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

- 11 -

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Again, Appellant argues that he presented an entrapment defense that entitled him to judgment of acquittal as a matter of law. In support of this assertion, Appellant relies solely on "the undisputed testimony of [himself] and his girlfriend, Jill Krewson." Appellant's Brief at 21. According to Appellant, he and Krewson testified that for "months prior to his arrest[,]" the CI in this case "repeatedly called [] Appellant on a daily basis and at all hours…." *Id.* Appellant stresses that both he and Krewson testified at trial that they told the CI to stop contacting Appellant, yet the CI continued. Appellant also testified at trial that "he succumbed to his addiction due to the pressure from the government informant." *Id.* He also argues that because the Commonwealth offered no evidence to refute his and Krewson's testimony about the CI's conduct, he established the defense of entrapment as a matter of law and, thus, the court should have granted his motion for judgment of acquittal.

We disagree. Even if Appellant's and Krewson's testimony was sufficient to establish entrapment (an issue on which we need not rule), the jury was free to disbelieve their claims that the CI continuously contacted Appellant despite their requests to stop. Appellant incorrectly suggests that the Commonwealth had a burden to *rebut* his and Krewson's testimony, and because it failed to meet that burden, the jury was required to accept his entrapment defense. No such burden rests on the Commonwealth when an entrapment defense is presented. *See Commonwealth v. Willis*, 990 A.2d

773, 775 (Pa. Super. 2010) (rejecting the appellant's argument that the burden shifted to the Commonwealth to disprove his entrapment defense, as the burden to prove entrapment, by a preponderance of the evidence, always rests with the defendant). Instead, the jury was free to reject Appellant's and Krewson's testimony, and conclude that Appellant was not entrapped. Thus, Appellant's challenge to the sufficiency of the evidence is meritless.

Next, Appellant avers that the trial court abused its discretion by denying his objection to the Commonwealth's closing argument. Specifically, he takes issue with the Commonwealth's following remark: "This is not the cocaine possessed and delivered by a drug user. This is the cocaine possessed and delivered by a drug trafficker." N.T. Trial, 7/20-7/21/15, at 201. Appellant argues that this comment was improper because the Commonwealth did not present expert testimony establishing that the amount of drugs he possessed was indicative of an intent to deliver. Appellant claims he was prejudiced by this remark because, "[c]ertainly, the prosecutor's unsupported assertion formed in the jury's mind a picture of [A]ppellant as a drug dealer, independent of the evidence of record." Appellant's Brief at 24. Accordingly, Appellant contends that "a new trial is warranted." *Id.*

We first conclude that Appellant has waived this issue for our review. At trial, Appellant simply objected to the prosecutor's remark; he did not request a mistrial or a curative instruction. Thus, his claim on appeal that "a

- 13 -

new trial is warranted" is waived. *See Commonwealth v. Brown*, 134 A.3d 1097, 1107 (Pa. Super. 2016); *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa. Super. 2013) (noting that "[e]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver").

In any event, even if Appellant had preserved this argument, we would conclude that he is not entitled to a new trial.

> [I]t is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.
>
> Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial. A mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. Moreover, a trial court may issue curative instructions to remove taint unless after a review of all the circumstances it determines that a curative instruction would be insufficient, warranting the extreme remedy of a mistrial.

*Brown*, 134 A.3d at 1106–07 (internal citations and quotation marks omitted).

Here, Appellant complains that the prosecutor unfairly suggested that he was a 'drug dealer' when there was no evidence to support that characterization. The record completely belies Appellant's argument. At

trial, Trooper Keppel testified that he was present with a CI when the CI arranged to purchase a large quantity of cocaine from Appellant; Appellant arrived at the time and (general) location of that planned drug transaction; and inside Appellant's vehicle, police found the amount of cocaine Appellant had agreed to sell to the CI. This evidence supported the prosecutor's at-issue comment in closing argument.

Moreover, Appellant completely fails to acknowledge that the trial court provided the following cautionary instruction to the jury directly after he objected to the prosecutor's statement:

> THE COURT: Ladies and gentlemen, as I told you before, you folks determine what the facts are. What the attorneys tell you in their closing statement is not a substitute for the evidence in the case, so you decide what the evidence in the case has been, and that is what you use to base your verdict on.
>
> To the extent that their closing arguments can assist you in viewing the evidence, you can consider them in that regard, but they are not a substitute for the evidence in the case.

N.T. Trial at 202-03. The court also cautioned the prosecutor to "be careful where [he was] treading...." *Id.* at 203.

Appellant did not argue at trial, and does not assert on appeal, that the court's cautionary instruction was inadequate to cure the purported prejudice he suffered from the prosecutor's challenged comment. We "presume[] that juries follow the court's instructions as to the applicable law." *Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997) (citation omitted). Accordingly, even if Appellant had preserved this claim, *and* we

- 15 -

concluded that the prosecutor's comment was improper, we would nevertheless determine that a new trial is not warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2016