J-S03017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FARID BROWN | : | No. 3166 EDA 2016 |

Appeal from the Order September 8, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002004-2013

BEFORE:   BENDER, P.J.E., PANELLA, J., and STEVENS[*], P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 21, 2018**

The Commonwealth of Pennsylvania appeals from the order dismissing charges against Farid Brown due to the Commonwealth's failure to comply with Rule 600 of our Rules of Criminal Procedure, the "Prompt Trial" rule. The Commonwealth claims the court erred in finding it had not completed discovery within the 365-day period required by the rule. After careful review, we affirm.

Our scope and standard of review on this issue are as follows.

Our standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party.

---

[*] Former Justice specially assigned to the Superior Court.

*Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (*en banc*) (citation omitted; brackets in original).

"[T]o obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges." *Commonwealth v. Hyland*, 875 A.2d 1175, 1189 (Pa. Super. 2005) (citation omitted). The first step in conducting a Rule 600 analysis is to calculate the "mechanical run date." *Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa. Super. 2003).

Rule 600 requires the Commonwealth to bring a defendant to trial within 365 days of the day the parties were notified that the record has been remanded to the trial court after an appeal. *See* Pa.R.Crim.P. 600(A)(2)(e). There is no dispute that the relevant start date was April 1, 2015. The Commonwealth correctly notes, however, that 2016 was a leap year, causing the mechanical run date to be March 31, 2016.

"If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant filed a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay." **Hunt**, 858 A.2d at 1241 (citations omitted). The court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances requested by the defendant. **See** Pa.R.Crim.P. 600(C)(1), (2); Rule 600, *Comment*, *Computation of Time*. The amount of excludable time is added to the mechanical run date to arrive at an adjusted run date. **See Commonwealth v. Ramos**, 936 A.2d 1097, 1103 (Pa. 2007).

Even where a violation of Rule 600 has occurred, we must apply a due diligence analysis to assess whether the delay was excusable. **See id**. "'Excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." **Hunt**, 858 A.2d at 1241 (citation omitted). Due diligence must be determined on a case-by-case basis. **See id**. "Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." **Id**., at 1241-1242 (citation and emphasis omitted). A delay that is excusable provides an extension to the adjusted run date. **See Ramos**, 936 A.2d at 1103. Extensions added to the adjusted run date produce the final Rule 600 run date. **See id**. The trial court must dismiss the charges if the

Commonwealth does not bring the defendant to trial on or before the final run date. **See id**.

A brief review of the procedural history of this case is helpful in understanding the parties' arguments. In 2012, Brown was charged with several offenses based upon the discovery of a firearm near Brown's passenger seat in a vehicle. The owner of the vehicle, Erica McKnight, was not in the vehicle at the time.

Brown filed a motion to suppress the firearm as the product of an illegal search. At the hearing, the Commonwealth sought to present evidence from a recording of a phone conversation between Brown and McKnight. **See** N.T., Suppression Hearing, 7/18/13, at 28. Brown's co-defendant, the driver of the vehicle, objected, asking for a transcription or recording of the entire phone call. **See id**. The Commonwealth offered to play the entire recording in court, but the court declined the offer and sustained the objection. **See id**., at 28-29.

Ultimately, the trial court granted Brown's motion to suppress. The Commonwealth appealed, arguing Brown either didn't have a reasonable expectation of privacy in the vehicle or, if he did, he abandoned it. A panel of this Court, in a split decision, reversed the suppression order, concluding Brown had no privacy interest in the vehicle, or even if he did, he abandoned it. **See Commonwealth v. Brown**, No. 2370 EDA 2013, 2015 WL 7573022

(Pa. Super., filed February 13, 2015) (unpublished memorandum). The record was remanded to the trial court on April 1, 2015.

Trial was scheduled for March 21, 2016. After a jury was picked, the Commonwealth presented several motions *in limine*. One motion requested the admission of the fact that Brown was subsequently found with McKnight's mobile phone in his possession. ***See*** N.T., Jury Trial, 3/22/16, at 9. Another motion sought to present evidence that paperwork[1] belonging to Brown was found in McKnight's vehicle nearly six months after his arrest. The Commonwealth intended to present this evidence to bolster its assertion that Brown had a relationship with McKnight and therefore a possessory interest in McKnight's vehicle in this case. ***See id***., at 8.

The trial court asked the Commonwealth how it planned to establish Brown's relationship with McKnight. The Commonwealth responded that it intended to utilize a recording from a prison call between Brown and McKnight. ***See id***., at 15. At this point, Brown's counsel, Gary Silver, notified the court that the Commonwealth had never produced this recording in discovery. ***See id***., at 15-16.

_____

[1] When the court asked the Commonwealth to identify the nature of this paperwork, the ADA responded, "a subpoena, probably." ***Id***., at 14. When the court asked, "[h]ave you ever seen it?," the ADA responded, "[n]o." ***Id***. The ADA did not yet have possession of the paperwork—"it [is] coming over from City Hall[.]" ***Id***., at 13.

The court asked the Commonwealth if the recording had ever been produced. "Yes, I turned over the entire tape at the – before the last motion." *See id*., at 16.

THE COURT: And these are tapes you're going to play during the trial?

[ADA]: Well, depending on, kind of, how – what exactly we can agree to with regard to the relationship between parties, I was either going to or not going to. But, yes, I intend to – if there is no agreement that she is his girlfriend, yes, I would intend to play them.

MR. SILVER: With all due respect, Your Honor, I don't have any documentation that shows that I received any tapes. I was given a transcript [of a] prison call, it's a one-page document, in two years, and I've never received anything else. That's not what [the ADA] is talking about now. This doesn't have any of that information.

THE COURT: Do you have the receipt or something showing that he received the tapes in discovery and recordings?

[ADA]: I handed him the tapes, and I – they were played during a motion.

…

THE COURT: So where is there in the notes of testimony evidence that you turned over to defense counsel a copy of those telephone calls?

[ADA]: I gave it to them that day.

THE COURT: But where is that in the record? Mr. Silver says it didn't happen.

MR. SILVER: I don't have any tapes. I have a file, I have everything in there. This is a long case, I don't

have those tapes. And, clearly, they weren't played that day.

…

I don't have it, and I did not have it turned over to me …. And, Judge, I would like to just supplement that. I just looked over the exhibit list that we were given today, and, even today, this exhibit list doesn't have the tape or CD on it. And it actually doesn't even have the transcription that supposed was available on July 11th, 18th and –

[ADA]:  You have it right there in your hand.

MR. SILVER:  I understand that, but it's not even on the exhibit list.

…

And may just direct this, the transcript that I have of the prison call is not the words and substance that she's telling this Court, that's not on this (indicating) transcript. That's why I said, is there another transcript? I only have this (indicating) one.

THE COURT:  It looks like 15 lines of transcript, and –

MR. SILVER:  Yeah, 11 lines. Right. If this is it, I have this (indicating). I don't have a tape. And if there's some other transcript, I don't have that. And that other transcript was what was talked to – about on July 11th, I assume, because it's not this transcript. Because this doesn't say anything about her being a girlfriend. It doesn't say anything about his mother, other than mother F'r.

*Id*., at 15-25. The court ruled the prison call recording inadmissible.

Other intended witnesses were discussed, and the Commonwealth was granted a brief recess. *See id*., at 34. After the recess, the Commonwealth argued the court's preclusion of the recording was an inappropriate remedy. *See id*., at 37. The court allowed the Commonwealth to play the full fifteen-minute recording for Brown *in camera*. *See id*., at 43.

The Commonwealth played the recording for the court and Brown, and stated that it intended "to introduce the relevant portions of the phone call" that identified "McKnight as the defendant's girlfriend." *Id*. After Brown asked the court what his options were after hearing the recording, the following exchange occurred:

THE COURT:    Whatever you want to do. You just ask me – tell me what it is you want to do, and if the two of you can't agree, I'll resolve it. I'm trying to get this case to go to trial now that we have a jury, if that's possible.

I'm bothered by the last minute turning over of the [recording.] I still roll up the windows on my car, what can I tell you. The lack of a transcript.

There's no transcript. How do we resolve the issues of what's being said on the tape? It's not all that crystal clear? And how do we figure out what the DA's describing as the relevant portions are? What she's going to introduce?

[There's] clearly irrelevant, prejudicial information on that recording, so how do you propose to resolve all this? And I ask you again, are you prepared to go to trial in this case, because it appears to me that you are not?

[ADA]:    Yes. I would go through and stop and start relevant –

THE COURT:  What are the relevant portions?

*Id*., at 44-45. The Commonwealth answered the court's query by identifying several statements allegedly made by Brown in the recording. The Commonwealth also identified a statement allegedly made by McKnight where she referred to Brown as her boyfriend. **See id**., at 45.

At this point, the court queried the Commonwealth as to how it would handle the hearsay nature of McKnight's alleged statement. **See id**. The Commonwealth did not directly answer the court's question, and began to address other portions of the recording. **See id**., at 45-46.

The court noted that it was unfair to Brown to have to address the evidentiary issues associated with the recording on such short notice after a jury had already been picked. **See id**., at 46. The court decided it was safer to dismiss the jury before double jeopardy attached, and ordered the Commonwealth to "do all the things you should have done in preparation for today. Turn over whatever it is you expect to introduce at trial." **Id**.

At the Commonwealth's request, the court set May 13th as the date for a status conference to review whether the Commonwealth had provided a copy of the recording to Brown. **See id**., at 48-49. Brown renewed his argument that trial should commence immediately with the recording precluded. **See id**., at 49-50. The court dismissed the argument, noting "If we had gone to trial, it would have been precluded. But after listening to the

tape, and listening to argument, we're not going to trial. I'm going to give them an opportunity[.]" *Id*., at 50.

Brown filed his first Rule 600 motion on March 29th. After a hearing held on April 15th, the court dismissed the motion due to Brown's failure to correctly identify the start date for Rule 600 calculations. *See* N.T., Hearing, 4/15/16, at 13.

On May 12th, Brown filed his second Rule 600 motion. In it, he asserted 408 non-excludable days had passed since the case record had been remanded from this Court, and the Commonwealth could not establish due diligence.

On June 9th, a hearing was held on Brown's second Rule 600 motion. Brown asserted the Commonwealth had finally provided a copy of the recording on May 13th, and thus, the Commonwealth had not fulfilled its pretrial obligations until that date. *See* N.T., Hearing, 6/9/16, at 9. The Commonwealth reiterated its belief that the recording had been provided to Brown at the suppression hearing. *See id*., at 12.[2] However, it conceded it had no documentation of producing the recording. *See id*.

The ADA asserted she had produced the recording at the suppression hearing. "In fact, I remember because Mr. Silver, as he often does, made me

---

[2] The ADA conceded she did not have the case file with her at this hearing, nor had she prepared for the hearing, believing that it was merely a re-filing of Brown's first Rule 600 motion. *See id*., at 10.

- 10 -

so angry that I in fact threw the tape onto the desk." *Id*., at 15. The court observed that if this had indeed happened, counsel for Brown's co-defendant, who was at the suppression hearing, would be able to testify to this exchange. *See id*. The court concluded the Commonwealth's argument required an evidentiary hearing to resolve the factual dispute. *See id*. The court scheduled the evidentiary hearing for July 18th.

On that day, the Commonwealth requested a continuance to September 8th. It claimed this continuance was necessary to allow it to order the transcripts for the April 15, 2016 hearing, and it was not prepared to proceed without them. *See* N.T., Hearing, 7/18/16, at 5. When the court reporter indicated she had not yet received a request for the transcripts for the April 15th hearing, the Commonwealth asserted it had asked the court's secretary for the transcripts on the Thursday before the Monday hearing. *See id*., at 5-6. The Commonwealth claimed it had mistakenly relied on the court's secretary to order the transcript. *See id*., at 6. The court granted the Commonwealth's request for a continuance.

On September 8th, a new ADA appeared for the Commonwealth. The court identified the issue of whether the Commonwealth had provided a copy of the recording to Brown at the suppression hearing as the only subject of the hearing. The Commonwealth responded that it now took the position "that an evidentiary hearing is not necessary to determine whether or not [the prior ADA] had passed the tapes or not." N.T., Hearing, 9/8/16, at 12. "[I]t's [the

Commonwealth's] position that the Commonwealth was never required to actually pass a copy of the recording[.]" *Id*., at 13.

After hearing the Commonwealth's arguments, the court granted Brown's second Rule 600 motion. The court found the Commonwealth had failed to establish due diligence in providing the recordings to Brown. The Commonwealth subsequently filed this timely appeal.

At the outset of our legal analysis, we note the Commonwealth does not dispute that the Rule 600 mechanical run date had passed prior to May 13, 2016. Rather, the Commonwealth's arguments center on its belief that the trial court misapplied the discovery rules in holding the Commonwealth had not established due diligence.

We therefore turn to Rule 573 of our Rules of Criminal Procedure, which governs discovery in criminal cases. Specifically, the rule provides, in relevant part, the following:

> (B) Disclosure by the Commonwealth.
>
>> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. *The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items*.
>
>>> (g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.
>
>>> …

(D) Continuing Duty to Disclose. If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, … such party shall promptly notify the opposing party or the court of the additional evidence[.]

Pa.R.Crim.P. 573(B)(1)(g), (D) (emphasis supplied). "[Q]uestions involving discovery in criminal cases lie within the discretion of the trial court and that court's decision will not be reversed" an abuse of discretion." *Commonwealth v. Rucci*, 670 A.2d 1129, 1140 (Pa. 1996) (citations omitted).

The Commonwealth first argues it was not required to disclose the existence of the recording at any time as Brown never specifically requested it. *See* Appellant's Brief, at 11. The Commonwealth highlights Brown's failure to request discovery in his written omnibus pre-trial motion and his failure to object to assertions made by the substituted ADA at the September 8, 2016 hearing. However, our review of the law and the record does not comport with the Commonwealth's summary.

It is true, under the rule, that the Commonwealth's obligation to provide even mandatory discovery is only triggered by a defense request for discovery. However, Rule 573 does not require a written discovery request. Rather, it requires the parties pursue informal discovery before seeking an order compelling discovery. *See* Pa.R.Crim.P. 573(A). Thus, the fact that Brown did not seek an order *compelling* discovery from the Commonwealth is not conclusive proof that he never *requested* discovery.

Indeed, the record reveals that informal discovery occurred. A court summary from March 6, 2013, indicates discovery was incomplete, as "Ballistics" were "Missing." Furthermore, it is clear the initial ADA understood Brown had requested the recording, as she adamantly asserted she had provided him with a copy at the suppression hearing.[3] We therefore conclude the Commonwealth's first issue on appeal merits no relief.

Next, the Commonwealth argues it was not required to provide a copy of the recording to Brown. The Commonwealth asserts to this Court that it was merely required to disclose the existence of the recording to Brown. It contends this disclosure requirement was satisfied at the suppression hearing when it first sought to introduce a portion of the recording.

This argument fails as a matter of law. Rule 573 requires more than mere disclosure of a recording in the Commonwealth's possession; it also requires the Commonwealth to permit the defendant to copy the recording. **See** Pa.R.Crim.P. 573(B)(1)(g). The Commonwealth does not argue, nor does it identify, any evidence in the record capable of supporting such an argument, that it provided Brown an opportunity to copy the recording prior to May 13, 2016.

---

[3] We note, without further comment, that it was the substitute ADA who forcefully advanced the argument that discovery was never requested—despite her acknowledgment that she had no personal knowledge of the history of the case. The record does not disclose why the initial ADA was not present at the September 8, 2016 hearing to advance this argument.

- 14 -

Our recent *en banc* decision in **Commonwealth v. Maldonodo**, 173 A.3d 769 (Pa. Super. 2017), is not to the contrary. While **Maldonodo** holds that the Commonwealth's discovery obligations are satisfied when the defense has "access" to a recording in the Commonwealth's possession, it also notes this "access" must include the ability to copy. **Id**., at 782. Furthermore, **Maldonodo** explicitly refutes the Commonwealth's assertion that it had no duty to produce the recording in its possession since the defense had "equal access" to the prison records. **See id**., at n.9. Thus, the Commonwealth's argument that mere disclosure of the existence of the recording, once it was in the Commonwealth's possession, was sufficient under Rule 573 is unavailing.

As the Commonwealth has failed to establish a right to relief, we affirm the order dismissing the charges.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/18

- 15 -