J-S04031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERICA T. WOODS | : | |
| | : | |
| Appellant | : | No. 792 EDA 2025 |

Appeal from the Judgment of Sentence Entered February 28, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002715-2022

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED MARCH 2, 2026**

Appellant, Erica T. Woods, appeals from the judgment of sentence of 6 to 23 months' incarceration to be served on house arrest, followed by 5 years' reporting probation and 40 hours of community service, imposed after a non-jury trial where she was convicted of charges related to a vehicular accident. We affirm.

The trial court summarized the facts and pertinent procedural history of this case, as follows:

### Statement of Facts

On December 18, 2019, at around 8:00 [a.m.], Appellant, while driving in reverse, at a high rate of speed, going the wrong direction[] on a one-way street, in a residential neighborhood, in the city and county of Philadelphia, struck an elderly pedestrian, Evelyn Lofton, causing her to be catapulted to the ground.  The entire accident was captured by a video surveillance camera, which the [t]rial [c]ourt viewed.

… [Ms.] Lofton testified that while she was crossing the street, she was struck by Appellant's vehicle and thrown to the ground.  After

Appellant approached Ms. Lofton, Appellant began "rubbing [Ms. Lofton's] leg" and repeating the phrase "you can get up." Ms. Lofton heard Appellant on the phone also repeatedly stating the name "Jesse." Shortly after being struck, Ms. Lofton's daughter[,] Megan Malachi, who resided on the block, came to the scene. She rendered aid to her mother and called 911. Appellant left the scene prior to the EMTs['] arrival, and she failed to provide her name and insurance information to Ms. Lofton. As a result of the accident, Ms. Lofton underwent surgery to repair her fractured right tibia. She continues to experience ongoing pain and discomfort from the incident.

[Ms.] Malachi corroborated her mother's testimony. [She] also testified that when she called 911, the dispatcher confirmed that [she] was the only person to report the accident to 911. Ms. Malachi also verified that Appellant failed to provide her name and insurance information before leaving the scene prior to the arrival of the EMT unit.

Police Officer William Barr testified that he was able to locate the vehicle driven by Appellant at the time of the incident, a 2016 Chevy Malibu. The officer observed a "minor problem with the rear" but "nothing severe, like a direct impact that would suggest that the car hit some sort of large object." The damage to the vehicle "was very subtle, but it would correlate [to] … making contact with a person." During the officer's inspection of the vehicle, Appellant arrived at the location. Appellant identified herself to the officer as "Tracy Williams" and claimed that she had nothing to do with the incident. The officer eventually was able to obtain Appellant's real name, Erica Woods. A check of records with the Pennsylvania Bureau of Motor Vehicles revealed that on the date of the incident, Appellant had a suspended driver's license which expired in 2015. Officer Barr was also able to obtain video surveillance footage of the incident. The video, viewed by the [t]rial [c]ourt, corroborated Ms. Lofton's and Ms. Malachi's testimony.

Jesse Roberts, Appellant's husband, testified he arrived at the scene of the incident in response to Appellant's phone call. He moved Appellant's vehicle from the scene and returned on foot. Mr. Roberts incredulously testified that he tried to call the police "maybe twice." [He] also incredulously testified that he instructed Appellant to leave the scene because Ms. Malachi was being belligerent. When Mr. Roberts spoke to the police at the scene, he falsely reported that he had been operating the vehicle and

that Ms. Lofton had already been lying on the ground prior. [He] claimed he lied to the police to protect his wife.

Appellant testified in her own defense. Appellant admitted that she was driving with a suspended license. [She] also admitted that she provided a false statement and false name to the police when questioned about the December 18, 2019 incident. Appellant even signed her written statement with the false name, Tracy Williams.

## **Procedural History**

On December 9, 2024, [the trial c]ourt denied Appellant's [Pa.R.Crim.P.] 600 motion[,] finding that although the date of trial was beyond the adjusted run date, the delay was not due to the Commonwealth's lack of due diligence. On December 11, 2024, Appellant was found guilty of Accidents Involving Death or Injury While Not Licensed, [75 Pa.C.S. § 3742.1(a)(1), Accidents Involving Death or Personal Injury, 75 Pa.C.S. § 3742(a),] Simple Assault, [18 Pa.C.S. § 2701(a),] Recklessly Endangering Another Person, [18 Pa.C.S. § 2705,] Driving While Operating Privileges Suspended or Revoked, [75 Pa.C.S. § 1543(a),] Reckless Driving, [75 Pa.C.S. § 3736(a),] and Aggravated Assault by Vehicle[, 75 Pa.C.S § 3732.1(a)]. A Presentence Investigation Report [("PSI")] was ordered, and a sentencing hearing was scheduled.

On February 28, 2025, after listening to counsel's arguments, reviewing the [PSI], and confirming the standard range of sentence for the most serious charge to be 6 to 14 months['] incarceration, plus or minus 6 months (Prior [R]ecord Score [of] 0 and Offense Gravity Score [of] 7), the [t]rial [c]ourt imposed [the sentence set forth above] … on the charges of Accidents Involving Death or Injury While Not Licensed, Accidents Involving Death or Personal Injury, and Aggravated Assault by Vehicle. The remaining convictions received either no further penalty or merged for purposes of sentencing.

Appellant timely filed an appeal of the verdict and sentence on March 24, 2025. Subsequently, Appellant's trial counsel withdrew his representation upon application to the Superior Court. On June 3, 2025, the [t]rial [c]ourt appointed new counsel to represent Appellant during the appeal process.

Trial Court Opinion ("TCO"), 7/16/25, at 2-5 (citations to the record omitted).

Appellant subsequently filed the court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court filed its Rule 1925(a) opinion on July 16, 2025.

On appeal, Appellant raises ten issues, which we consolidate, restate, and reorder as follows, for brevity and ease of disposition:

1. Whether the evidence introduced at trial and all reasonable inferences derived from the evidentiary record, when viewed in the light most favorable to the Commonwealth as verdict winner, was insufficient to establish, beyond a reasonable doubt, all elements of each of the seven charges for which Appellant was convicted?

2. Whether the verdict of guilty on all offenses was against the weight of the evidence?

3. Whether the court erred by denying Appellant's Rule 600 motion, since the Commonwealth was not duly diligent and exceeded the 365 days to bring the case to trial as set forth under this rule?

4. Whether the sentence imposed on Appellant was harsh and excessive and an abuse of discretion, since the trial court failed to properly consider all the sentencing factors of 42 Pa.C.S. § 9721(b) or any mitigating evidence when it imposed the sentence in question?

*See* Appellant's Brief at 12-14.

## Sufficiency of the Evidence

In her first issue, Appellant argues "[t]he evidence introduced at trial and all reasonable inferences derived from the evidentiary record, viewed in the light most favorable to the Commonwealth as verdict winner, is insufficient to establish all elements for the crimes for which [s]he was [convicted], beyond a reasonable doubt."  Appellant's Brief at 28 (emphasis omitted).

- 4 -

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Devine***, 26 A.3d 1139, 1145 (Pa. Super. 2011) (citation and brackets omitted).

Appellant does not identify which specific element, of which specific conviction, the Commonwealth failed to prove. ***See*** Appellant's Brief at 29-30. Instead, she merely sets forth the definition of each offense, and then argues the evidence was insufficient because, "given these undisputed facts, the Commonwealth failed to prove each and every element … beyond a reasonable doubt[,]" or states, "the undisputed facts of this case negate the elements." ***Id.*** We agree with the Commonwealth that Appellant's undeveloped argument and failure to specify which element of which offense lacked sufficient evidence results in waiver of her sufficiency challenge. ***See*** Commonwealth's Brief at 9; ***see also Commonwealth v. Hardy***, 918 A.2d

- 5 -

766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Nevertheless, even if her sufficiency challenge was not waived, Appellant's argument that there was insufficient evidence to support her convictions is without merit.

Appellant's offense of Accidents Involving Death or Injury While Not Licensed is defined as follows:

> **(a) Offense defined.--** A person whose operating privilege was disqualified, canceled, recalled, revoked or suspended and not restored or who does not hold a valid driver's license … commits an offense under this section if the person was the driver of any vehicle and:
>
> > (1) caused an accident resulting in injury or death of a person[.]

75 Pa.C.S. § 3742.1(a)(1). "If the victim suffers serious bodily injury, any person violating subsection (a)(1) commits a felony of the third degree." 75 Pa.C.S. § 3742.1(b)(2). Serious bodily injury is defined as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 75 Pa.C.S. § 102.

- 6 -

Our review of the record indicates the Commonwealth's evidence including testimony, admissions by Appellant, video footage, and business records, as found credible by the trial court, established: (1) Appellant's license was suspended and expired, (2) Appellant was driving her 2016 Chevy Malibu, which struck the victim, (3) the accident caused a torn meniscus and fracture to the victim's right tibia requiring surgery and the insertion of a metal plate in the knee to repair the injuries sustained, leading to ongoing pain and discomfort, and (4) the victim's injuries constitute serious bodily injury under Section 102. **See** N.T. Waiver Trial, 12/11/24, at 11-12, 17, 43, 78; **see also** Exhibits C-5, C-6, C-7. This evidence was sufficient to sustain Appellant's conviction for Accidents Involving Death or Injury While Not Licensed.

Appellant's offense of Accidents Involving Death or Personal Injury is defined as follows:

> **(a)  General rule.--**The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid).  Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a).  "If the victim suffers serious bodily injury, any person violating subsection (a) commits a felony of the third degree…."  75 Pa.C.S. § 3742(b)(2).

In addition to the facts set forth above, the record supports the trial court's finding that "[a]lthough Appellant did remain on the scene for a short

time, she did leave prior to the arrival of the EMT Unit, and Appellant failed to provide her name or insurance information to either the victim … or the victim's daughter…." TCO at 12-13, **see also** N.T. Waiver Trial at 16, 31. Thus, the evidence was sufficient to support Appellant's conviction.

For Appellant's offense of Simple Assault, "a person is guilty of assault if he … attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Appellant clearly caused bodily injury to the victim in this case. "Based on the credible testimony and the video footage, the [t]rial [c]ourt found that Appellant acted recklessly when she drove her vehicle in reverse, at a high rate of speed, in the wrong direction on a one-way street, in a residential neighborhood." TCO at 13. Our review of the record supports the trial court's findings. Thus, the evidence was sufficient to support Appellant's conviction for Simple Assault.

For Appellant's conviction of Recklessly Endangering Another Person, "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705.

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). As set forth above, the Commonwealth's evidence established Appellant acted recklessly by driving in reverse, at a high rate of speed, in the wrong direction down a one-way street, in a residential neighborhood, thereby placing the victim, a pedestrian, in danger of death or serious injury. "As the [t]rial [c]ourt explained, even if Appellant's excuse for backing down the street were to be believed, the fact that she did so at a high rate of speed in a *residential* neighborhood was reckless…." TCO at 14 (emphasis in original). Thus, the evidence was sufficient to support Appellant's conviction.

For Appellant's offense of Driving while Operating Privileges Suspended or Revoked, "any person who drives a motor vehicle on any highway or trafficway of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege has been restored is guilty of a summary offense…." 75 Pa.C.S. § 1543(a). Our review of the record indicates the Commonwealth's evidence established Appellant was driving the 2016 Chevy Malibu on a roadway while her license was expired, and Appellant also admitted she was driving with a suspended license. The evidence was therefore sufficient to sustain Appellant's conviction for this offense.

For Appellant's crime of Reckless Driving, "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." 75 Pa.C.S. § 3736(a). As set forth above, the Commonwealth's evidence, including video footage, established Appellant

drove in reverse down a one-way street at a high rate of speed in a residential neighborhood. This was sufficient to prove she committed the offense of reckless driving.

For Appellant's offense of Aggravated Assault by Vehicle,

[a]ny person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S § 3732.1(a). Our review of the record as set forth above shows the Commonwealth's evidence established Appellant drove recklessly and caused serious bodily injury to the victim while in violation of multiple laws of this Commonwealth. Accordingly, the evidence was sufficient to sustain her conviction for this offense.

In sum, viewing all the evidence in the light most favorable to the Commonwealth, it is clear there was sufficient evidence to enable the trial court to find the Commonwealth had proven, beyond a reasonable doubt, every element of each of the seven charges for which Appellant was convicted. Therefore, even if Appellant's sufficiency claim was not waived, we would conclude it lacks merit.

**Weight of the Evidence**

In her second issue, Appellant argues the verdict of guilty on all offenses was against the weight of the evidence. Appellant's Brief at 30-32. Initially,

we conclude Appellant's claim is waived. To properly preserve a challenge to the weight of the evidence, that claim must be raised before the trial court. Pa.R.Crim.P. 607(A) (stating a claim the verdict was against weight of evidence must be raised before trial court orally or in a written motion prior to sentencing, or in a post-sentence motion). Appellant did not orally raise, nor file a written pre- or post-sentence motion raising this issue, and she fails to point to where in the record she preserved this claim prior to sentencing. Pa.R.A.P. 2119(e) (directing the appellant to set forth in the argument portion of his brief where in the record he preserved the issue before the trial court); *Commonwealth v. Griffin*, 65 A.3d 932, 938 (Pa. Super. 2013) (finding a weight of the evidence claim waived where the appellant failed to raise it in a pre-sentence motion, did not address the issue orally prior to sentencing, and did not raise it in a post-sentence motion).

Even if the issue were not waived, we would conclude Appellant's claim is meritless. Our Supreme Court has explained:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well[-]settled that the [trier of fact] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [trier of fact]'s verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

In addition to the factual background and analysis regarding the sufficiency of the evidence set forth above, the trial court cited the following facts in concluding that its verdict was not contrary to the weight of the evidence:

> In the instant matter, the Commonwealth presented the credible testimony of Ms. Lofton, Ms. Malachi, and Officer Barr. In addition to the credible testimony, the Commonwealth provided corroboration through video footage, medical records[,] and business records. The Commonwealth also provided evidence demonstrating Appellant's consciousness of guilt [by] producing Appellant's use of a false name, providing a statement in which she falsely claimed she was not driving the 2016 Chevy Malibu, and even signing the false statement with her false name, Tracy Williams. Finally, the [t]rial [c]ourt determined that the testimony of Appellant and her husband, Mr. Roberts, was mostly incredulous. Therefore, the credible testimony and corroborating evidence amply provides a weight of evidence to support the guilty verdict.

TCO at 19 (citations to the record omitted).

Based on the entirety of the record, we would conclude there was no abuse of discretion by the trial court in finding the weight of the evidence supported the verdict, even had Appellant preserved this issue.

**Rule 600**

In her third issue, Appellant argues "the [trial] court erred by denying the Rule 600 [m]otion since the Commonwealth was not duly diligent and exceeded the 365 days to bring the case to trial as set forth under this rule." Appellant's Brief at 24.

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review … is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

***Commonwealth v. Ramos***, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*) (citation omitted). Rule 600 states, in pertinent part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or nolo contendere.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*\*\*

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

…

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

(ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(A), (C).

[I]n ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

Otherwise, the due diligence component of Rule 600 "would have little, if any, meaningful import." [**Commonwealth v.**] **Mills**, 162 A.3d [323,] 327 [(Pa. 2017)] (Wecht, J., concurring).

**Commonwealth v. Harth**, 252 A.3d 600, 618 (Pa. 2021) (footnote omitted).

Relevant to Appellant's argument herein, we observe that in **Commonwealth v. Simms**, 500 A.2d 801 (Pa. 1985), the Pennsylvania Supreme Court clarified the standard for determining when the Rule 600 period begins to run in a case where multiple complaints have been filed against a defendant. The Supreme Court explained:

[W]hen an initial complaint has been withdrawn or otherwise dismissed, the [Rule 600 time] period begins to run anew with the filing of a subsequent complaint only if (1) the earlier complaint was properly dismissed by a competent magisterial or judicial

- 14 -

authority, and (2) the record does not reveal evidence of a prosecution attempt to circumvent Rule [600[1]].

*Id.* at 803; *accord Commonwealth v. Schafer*, 576 A.2d 392, 394 (Pa. 1990) (holding the Rule 1100 period began to run at the filing of the second complaint where charges were dismissed by the trial court due to a lack of a prima facie case and a lack of prosecution and there was no attempt by the Commonwealth to circumvent the Rule).

In this case, the extent of Appellant's Rule 600 challenge is limited to the following:

> [Appellant] argues the Commonwealth was attempting to circumvent Rule 600 as it proceeded with the Preliminary Hearing knowing that it was missing crucial witnesses necessary for its case as evidenced in these witnesses being called at the refiled hearing. Since the original criminal complaint in this case was filed on [November] 10, 2020, the mechanical run date is [November] 10, 2021.
>
> For purposes of the Rule, there could arguably be 248 days attributable to [Appellant] and 340 days attributable to the court in this matter; thus adjusting the run date to June 21, 2023. The Commonwealth did not show due diligence in bringing [Appellant] to trial within 365 days from the mechanical run date.

Appellant's Brief at 35-36.

Appellant's bald assertions that the Commonwealth was attempting to circumvent Rule 600 and did not show due diligence in bringing Appellant to trial are not supported by any pertinent legal authority or references to the record. *See Hardy*, 918 A.2d at 771; *see also* Pa.R.A.P. 2119(a)-(c). Beyond seemingly arguing the court's Rule 600 calculation should have

---

[1] *Simms* addressed Pa.R.Crim.P. 1100, the predecessor to Rule 600.

included the 11 months between the filing of the first complaint and the filing of the second, Appellant fails to specify any details regarding the periods she concedes could be excluded from the calculations. She also does not identify any other periods of time attributable to the Commonwealth that the trial court should have included in the calculation but did not. Appellant also fails to provide any specific allegations regarding at what points prior to trial the Commonwealth failed to exercise due diligence. Due to Appellant's failure to meaningfully develop her Rule 600 argument, we conclude it is waived. *See Hardy*, *supra*.

Nevertheless, even if not waived, we would conclude Appellant's claim is meritless. In response to Appellant's claim that the calculation for Rule 600 should run from the date of the first filed complaint rather than the second, the trial court opined:

> In the instant matter, a review of the court docket indicates that a complaint was originally filed on November 10, 2020[,] by the Commonwealth against Appellant regarding the December 18, 2019 incident. On October 15, 2021, the complaint was dismissed for lack of evidence. On November 3, 2021, the Commonwealth refiled the charges against … Appellant stemming from the December 18, 2019 incident. This time, on April 1, 2022, the charges were held for court.
>
> The [t]rial [c]ourt determined [that,] because the earlier complaint was properly dismissed by a competent magisterial or judicial authority and the record does not reveal evidence of a prosecution attempt to circumvent Rule 600, pursuant to *Lynn*,[2]

_____

[2] *See Commonwealth v. Lynn*, 815 A.2d 1055, 1058 (Pa. Super. 2003) (quoting the *Simms* "standard for determining when the Rule 600 period beings to run in a case where multiple complaints have been filed against a defendant").

the date of refiling the complaint, November 3, 2021[,] was the date to be utilized for purposes of [Rule 600] calculations.

TCO at 20.

Upon our review of the record, we discern no abuse of discretion in the trial court's determination that Rule 600 time calculations began anew upon the filing of the subsequent complaint. Appellant's argument rests on the premise that the Commonwealth proceeded with the preliminary hearing knowing it was missing crucial witnesses necessary for its case. However, this argument is belied by the record of the Rule 600 hearing, where the following exchange occurred:

> [The Commonwealth]: The complainant and Officer Barr testified on [October 15, 2021,] according to the notes.
>
> THE COURT: According to your notes?
>
> [The Commonwealth]: No. The notes of testimony that I am looking at.
>
> THE COURT: I don't have the notes of testimony. So[,] you are saying your main officer did testify, then why did it get discharged for lack of evidence? If you had your main officer and the complainant, how come it didn't get past the preliminary hearing stage?
>
> [The Commonwealth]: So, Your Honor, I am assuming it was based on defense argument.
>
> THE COURT: [Defense counsel], what do you have on October 15, 2021, why it wasn't held for court?
>
> [Defense Counsel]: On October 15, 2021, and then on February 11, 2022. And so[,] the complainant testified on October 15th and Officer Barr. So that's the two people. And the person who testified on February 11th, the second hearing, was the complainant's daughter who, you know – I was there, nobody else was, but who was present but not called at the October date.

- 17 -

THE COURT: Okay. So, again, that goes to the idea that they just put on a bad case, not that they were trying to defeat the 365.

[Defense Counsel]: One could argue.

N.T. Rule 600 Hearing, 12/9/24, at 24-25. It is clear from the record that both Officer Barr and the complainant testified at the preliminary hearing, and the only additional witness called at the second preliminary hearing was the victim's daughter. Therefore, the Commonwealth was not missing 'crucial witnesses' at the initial preliminary hearing, as Appellant contends. As she presents no other challenge to the court's determination, we conclude there was no abuse of discretion in the trial court's finding the first complaint was properly dismissed and the record lacked evidence of a prosecution attempt to circumvent Rule 600, as required by **Simms**.

Further, upon review of the record, we discern no abuse of discretion in the trial court's decision that the Commonwealth exercised due diligence throughout the duration of the case. The court found the delay in bringing Appellant to trial was primarily due to "the [t]rial [c]ourt's limited availability in its schedule to conduct jury trials, and the long delays between the scheduled jury trial dates was not the fault of the Commonwealth." TCO at 22-23; **see also** Trial Court Docket Sheet. For instance, the court noted the Commonwealth had to request continuances due to an eyewitness testing positive for COVID, the "elderly victim … being exposed to COVID[,]" and the "elderly victim['s] being hospitalized." TCO at 22. The court deemed this time excusable. **Id.** Appellant does not assert any challenge to the court's determination that the Commonwealth exercised due diligence during these

delays. Therefore, even if this claim were not waived, we would discern no basis to disturb the discretion of the trial court.

## Discretionary Aspects of Sentence

In her fourth and final issue, Appellant argues the sentence imposed was "harsh and excessive and an abuse of discretion[,] since the [trial] court failed to properly consider all of the sentencing factors of 42 Pa.C.S.[] § 9721(b) or any mitigating evidence…." Appellant's Brief at 24.

Appellant's issue implicates the discretionary aspects of her sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of [their] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006)…. Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003)….
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary

to the fundamental norms which underlie the sentencing process."
***Sierra***, ***supra*** at 912–13.

***Griffin***, 65 A.3d at 935 (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, although Appellant filed a timely notice of appeal and a Rule 2119(f) statement, the record is devoid of any objection made at the time of sentencing or any post-sentencing motions. Therefore, we conclude Appellant failed to preserve this issue before the trial court and it is waived. ***See id.*** at 936 ("[I]ssues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted).

Even if the issue was not waived, and had we determined Appellant raised a substantial question, we would ultimately conclude Appellant's claim is meritless.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006). Additionally, in crafting a sentence, courts are directed to consider "the protection of the public, the gravity of the offense as it relates to the impact

on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Here, Appellant challenges whether the sentence imposed was "harsh and excessive and an abuse of discretion[,] since the [trial] court failed to properly consider all of the sentencing factors of 42 Pa.C.S.[] § 9721(b) or any mitigating evidence…." Appellant's Brief at 24. Appellant argues "the [trial] court, in essence, only considered the seriousness of the offenses without addressing any … mitigating factors when it imposed an aggravated range sentence." *Id.* at 27 (citation omitted). Specifically, she avers "the [trial] court, in its discretion, failed to consider [Appellant's] criminal history, age, employment, mental health, dysfunctional upbringing, and/or other personal characteristics." *Id.* at 27-28.

A thorough review of the record reveals the court considered the mitigating and statutory factors set forth by Appellant. Notably, the court had and reviewed a PSI. Thus, we "presume[] the court was aware of and weighed all relevant information contained [in the report] along with any mitigating sentencing factors." *Commonwealth v. Velez*, 273 A.3d 6, 10 (Pa. Super. 2022) (internal quotation marks omitted). Additionally, prior to sentencing Appellant, the trial court set forth its reasoning as follows:

> [Appellant], you had no business being on the road. You didn't have a valid license[]. You've had a substantial period of time of not having a valid license[] and you're repeatedly telling this [c]ourt that you didn't do wrong that day, that you stayed, you called 911, you were the upright citizen and that this [c]ourt is so wrong for finding you guilty. I know that's what you're saying[,] and you have that right to [say] that to me, and I know you're

protesting your innocence and that's perfectly fine. But that's what I have to deal with when … I have a perpetual person who's been driving on the roads in the Commonwealth of Pennsylvania and causing a substantial accident to another person. She didn't do anything wrong that day[,] other than just crossing the street.

And I am remembering exactly how every[one] gasped when they saw how fast you were going down on that Ring camera. You were going so fast, anybody backing down a residential street using any care knows go as slow as possible. You zipped like you didn't want to be bothered and … then subsequently watching you trying to get her up, trying to get her up, trying to get her up.

And then you told me repeatedly that the daughter was intimidating you and you were afraid and didn't want to be there anymore because you were so scared for yourself. I didn't see that body language. I didn't see her doing anything to you.

And then the wors[t] part is when the police confront you, you give a false name, still not taking the responsibility[, and] … you want to tell this [c]ourt that you didn't do anything wrong that day, and you were such a responsible person because you called 911, [but] it's hard for me to find that to be true because the evidence says something totally different.

So[,] I mean, I know you don't think you did anything, and again that's your right and you have every right to protest your innocence. You obviously have convinced your family because I hear that from all of them in the letters, just as the Commonwealth has pointed out, they feel that [an] injustice was done, that this [c]ourt rendered an invalid verdict, and again, that's your prerogative. But I heard the testimony.

I saw what you did, and again I know for a fact [that,] but for that Ring camera[,] she would never have got[ten] her day in court, she would have never had justice. It was just sheer luck that somebody happened to have a Ring camera that pointed out onto [that] street, not everybody does that. And you should thank that neighbor. Thank that neighbor, ma'am.

But [defense counsel], you make very good points because I do know that there is mitigation here. And I mention that because as far as I'm concerned right now[,] I think there are a lot of aggravated factors that the Commonwealth has pointed out, but there is a lot of mitigation.

I see a substantial work history, and I agree with you, that is a phenomenal thing that I don't want to take away. Regardless [of] whether or not [Appellant] has dependents, there's a lot of people who are obviously relying on her and also[,] that just shows her character. I am a big advocate for people who work. I think that says everything about somebody's character.

I do find the fact that her family is here does mean something, absolutely. They are here standing with her and that does mean that, as you were saying, there is something to be said about[,] obviously she has character in the community. Not everybody shows up for sentencing like this. So[,] we are in a balance. How do I address all of this.

Now one of the first things I will mention is I had already thought about community service being part of this because, [Appellant], you need to learn what community really means. Community is not just your family. It's your whole neighborhood. It's the people you work with, the people we live near. I don't even care if you get to know them or not. They're part of your community. What you did that day is you violated that trust in that community. So[,] I had already considered part of the sentence to have community service.

I do believe that there should be some type of confinement[,] but I think house arrest would address it, only because I do believe that there should be some ramifications for somebody driving after how many periods of years not … having a valid license and causing this accident. I'm assuming house arrest would not be an issue for her because verified work[ would be] perfectly permissible.

N.T. Sentencing, 2/28/25, at 53-58.

Here, it is clear from the record that the court considered the statutory requirements and all the mitigating factors listed by Appellant. It is also clear the court balanced the mitigating factors with the aggravating ones prior to imposing a sentence. Based upon all the evidence before it, the court imposed a sentence of 6 to 23 months' incarceration to be served on house arrest, followed by 5 years' reporting probation and 40 hours of community service,

a sentence falling within the standard range of the guidelines. We conclude the record supports the sentencing court's reasoning and its decision conforms to the applicable law. As such, even if Appellant's claim was not waived, we would discern no abuse of discretion, as Appellant has not established "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias[,] or ill will," or "arrived at a manifestly unreasonable decision." *Shugars*, 895 A.2d at 1275.

For these reasons, we conclude Appellant's claims are waived and/or meritless. As she is not entitled to relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/2/2026